113 S.W.3d 340 (2003)
In the Interest of B.L.D. and B.R.D., Minor Children.
No. 01-0882.
Supreme Court of Texas.
Argued February 12, 2003.
Decided July 3, 2003.
Rehearing Denied August 21, 2003.
*342 Julie Caruthers Parsley, Office of the Solicitor General of Texas, Joseph David Hughes, Assistant Solicitor General, Greg Abbott, Attorney General of the State of Texas, Howard G. Baldwin, First Assistant Attorney General of Texas, Philip A. Lionberger, Lisa Royce Eskow, Office of the Attorney General of Texas, Austin, John W. Segrest, McLennan County Criminal District Attorney, James Wiley, Assistant Criminal District Attorney, Daniel David Semanek, Office of the Criminal District Attorney, Waco, for petitioner.
Nita C. Fanning, Law Office of Nita Fanning, Waco, L.T. "Butch" Bradt, The Teltschik Law Firm, Houston, Gerald Ray Villarrial, Waco, for respondent.
Justice WAINWRIGHT delivered the opinion of the Court.

I. Introduction
Following a jury verdict, the trial court terminated the parental rights of Jimmy and Spring Dossey to two of their children. The court of appeals reversed the trial court's judgment on two grounds, holding that (1) the Dosseys were deprived of a constitutional right to effective assistance of counsel due to their joint representation by an appointed attorney when there was a conflict of interest between them, and (2) the form of the jury charge violated the Dosseys' constitutional rights. 56 S.W.3d 203, 205. The Texas Department of Protective and Regulatory Services petitioned this Court to review both holdings.
The Texas Family Code provides that indigent parents who are defendants in the same termination lawsuit are entitled to nonconflicted counsel. Tex. Fam.Code § 107.013(b). Today we decide the standard for determining whether a conflict of interest exists between parents in a termination suit. We hold that, in deciding *343 whether there is a conflict of interest between parents opposing termination in a single lawsuit, the trial court must determine whether there is a substantial risk that the appointed counsel's obligations to one parent would materially and adversely affect his or her obligations to the other parent. Applying this standard, we determine that the trial court did not err in finding no conflict of interest between the Dosseys. We need not address the question regarding a constitutional right to effective assistance of counsel raised sua sponte by the court of appeals. We further hold that the court of appeals erred in reviewing a jury charge complaint that was not preserved in the trial court. Accordingly, we reverse the judgment of the court of appeals and remand to that court.

II. Factual and Procedural Background
Jimmy and Spring Dossey are the married parents of two children, B.L.D. and B.R.D. In January 1995, the Texas Department of Protective and Regulatory Services investigated Spring regarding an incident in which then three-month-old B.L.D. fell off a car trunk and fractured his skull. The injury healed, and the Department concluded that the incident was an accident. In February 1998, then fifteen-month-old B.R.D. was seriously scalded in the kitchen sink when Spring was the only parent in the house. Spring told hospital personnel that the child climbed into the sink and turned on the hot water while she was asleep, but a hospital nurse thought the burns were inconsistent with Spring's explanation and reported the incident to the Department. The Department immediately removed both children from the Dosseys' custody and filed a suit affecting the parent-child relationship. See Tex. Fam.Code §§ 101.032(a); 102.003(a)(5). After a hearing, the trial court granted temporary conservatorship to the Department until the Dosseys complied with a court-ordered family reunification plan.
Within a month of their children's removal, the Dosseys retained attorney James Ray to represent them. In October 1998, following a hearing requested by Ray, the trial court determined that it was in the best interests of the children to return them to their parents pending completion of counseling and other terms of the family reunification plan. However, in February 1999, the court ordered the children removed again based on a finding of immediate danger to their health or safety. While the court order did not specify the basis of this finding, the Department's affidavit in support of removal cited allegations that Jimmy stole a gun, worked as a drug informant for the police, lied to the Department about being a drug informant, and downloaded child pornography on a home computer. The Department also alleged that both parents were failing to meet the children's physical needs.
The original statutory deadline for resolving the suit expired on March 1, 1999. See Tex. Fam.Code § 263.401(a). The court granted a 180-day extension of that deadline based on the Department's assertion that the parents needed more time to complete the family reunification plan before the children should be returned to them. See id. § 263.401(b). In May 1999, the Department changed its goal from family reunification to termination and adoption and amended its petition to seek termination of the Dosseys' parental rights. The petition alleged that termination would be in the children's best interests, and that both Jimmy and Spring had (1) knowingly placed or knowingly allowed their children to remain in conditions or surroundings that endangered the physical or emotional well-being of the children, and (2) engaged in conduct or *344 knowingly placed their children with persons who engaged in conduct that endangered the physical or emotional well-being of the children. See id. § 161.001(1)(D), (E).
On June 18, 1999, Ray withdrew as counsel because the Dosseys could no longer afford to pay him. The Dosseys requested that the trial court appoint Ray to continue representing them. Instead, the trial court appointed attorney Gerald Villarrial to serve as the Dosseys' counsel. A month later, Jimmy Dossey tested positive for methamphetamine and marijuana use and was arrested and charged with a Class C misdemeanor for assaulting Spring in a store parking lot.
Jury selection in the termination case began on August 23, 1999, and trial began on August 24. At a pre-trial hearing on August 17, Villarrial moved to sever the cases on the ground that he could not adequately represent both clients in the same trial due to "a potential for conflict of interest" based on the evidence that he anticipated would be offered against each of them. The trial court denied the motion. At the close of evidence in the trial on the merits, Villarrial again moved to sever the cases, this time on the ground that an actual conflict of interest had developed. Specifically, Villarrial argued that "the greater weight of the evidence" admitted was probative only on grounds for terminating Jimmy's rights, and if he represented only Spring in the case, his strategy would have been to "point the finger at Jimmy Dossey" and advise the jury only to terminate his rights. The trial court denied the motion.
In the jury charge, the trial court submitted the two grounds for termination alleged against each parent disjunctively and four broad-form questions that required the jury to determine whether the parent-child relationship between each parent and each child should be terminated.[1] Neither Villarrial nor the State objected to the form of the charge. By a 10-2 vote, the jury returned a verdict terminating the parental rights of Jimmy and Spring to both children. The trial court rendered judgment in accord with the verdict.
On appeal, the Dosseys argued that the trial court erred in refusing to appoint separate counsel or to grant separate trials, and that the disjunctive instruction combined with broad-form jury questions deprived them of a right to have ten jurors agree on a specific finding supporting termination. A divided court of appeals reversed on both grounds. First, the court *345 of appeals held that "a statutory right to counsel in a termination case includes a due-process right that the representation be effective." 56 S.W.3d at 212. The court concluded that an actual conflict of interest arose between the parents because Villarrial could not strongly advocate for one parent due to his ethical obligations to the other. See id. at 214. Next, the court of appeals reviewed the unpreserved complaint of charge error and held that the submission of grounds for termination in the disjunctive combined with the broad-form jury questions violates due process in parental rights termination cases. See id. at 218-19. The court remanded the case to the trial court for a new trial without reviewing the Dosseys' other complaints on appeal. See id. at 219. The Department petitioned this Court for review.

III. The Conflict of Interest Claim
The Department first contends that the court of appeals erred in holding there is a constitutional right to effective assistance of counsel in parental rights termination cases. We observe as a preliminary matter that the Dosseys did not assert in the court of appeals a constitutional right to effective assistance of counsel. Instead, the Dosseys argued that the trial court erred in failing to appoint separate counsel or grant separate trials because their interests conflicted.[2] The court of appeals sua sponte framed this issue as whether there is a due process right to effective assistance of counsel at trial in parental rights termination cases. See id. at 210-12.

A. Preservation
The essence of the Dosseys' complaint on appeal is that they were harmed by joint representation at the same trial due to a conflict of interest. We first must determine whether the Dosseys preserved this complaint.
At a pre-trial hearing and after the close of evidence, the Dosseys through their appointed counsel moved to "sever" the cases so that their attorney could represent them "one at a time." The Department does not dispute that Villarrial's motion sought separate trials.[3] And the Dosseys stated the grounds for the motion with sufficient specificity to make the trial court aware that they were seeking separate trials as a remedy for a conflict of interest between them. See Tex.R.App. P. 33.1(a)(1)(A) (stating that to preserve an issue for appellate review, the grounds for the ruling must be stated with sufficient specificity to make the trial court aware of the complaint). Consequently, we may resolve the Dosseys' complaint regarding the conflict of interest by reviewing the trial court's ruling on the motion for separate trials.
By determining that the Dosseys preserved their complaint regarding a right to *346 nonconflicted counsel with a motion for separate trials, we do not condone the notion that ordering separate trials could have remedied Villarrial's own ethical obligation to avoid a conflict of interest in his joint representation. See Tex. Disciplinary R. Prof'l Conduct 1.06(b), reprinted in Tex. Gov't Code, tit. 2, subtit. G, app. A (Tex. State Bar R. art. X, § 9). In fact, it probably would not.

B. The Motion for Separate Trials
A trial court may order separate trials "to avoid prejudice." See Tex.R. Civ. P. 174(b). Here, the Dosseys requested separate trials to avoid the prejudice posed by an alleged conflict of interest. In Texas, indigent parents have a statutory right to counsel in termination cases. Under Family Code § 107.013(a)(1), a court must appoint counsel to an indigent parent who opposes termination of his or her parental rights. Tex. Fam.Code § 107.013(a)(1). In a termination suit against two parents, both may be entitled to appointed counsel. In that circumstance, the statute provides that if "the court finds that the interests of the parents are not in conflict, the court may appoint a single attorney ad litem to represent the interests of both parents." Id. § 107.013(b). The statute therefore implicitly provides that indigent parents who face termination of their parental rights in the same suit are entitled to nonconflicted counsel.[4]
What constitutes a conflict of interest between parents within the meaning of section 107.013(b) is a question of first impression for this Court. Typically, courts look to the ethical rules promulgated by the State Bar to evaluate conflicts of interest in civil cases. See, e.g., Mandell & Wright v. Thomas, 441 S.W.2d 841, 846 (Tex.1969) (applying former Texas Canon of Ethics to conflict of interest claim based on joint representation in a wrongful death action); Sylvia M. v. Dallas County Child Welfare Unit, 771 S.W.2d 198, 204-05 (Tex.App.-Dallas 1989, no writ) (applying former Disciplinary Rule 5-105); In re H.W.E., 613 S.W.2d 71, 72 (Tex.Civ.App.-Fort Worth 1981, no writ) (same); Fed. Deposit Ins. Corp. v. United States Fire Ins. Co., 50 F.3d 1304, 1315 (5th Cir.1995) (applying the Disciplinary Rules to evaluate a conflict of interest for purposes of a motion to disqualify opposing counsel). Generally, ethical rules prohibit an attorney from jointly representing clients when the clients' interests are adverse to each other. For instance, Texas Disciplinary Rule of Professional Conduct 1.06(b)(1) provides that a lawyer shall not represent a person if the representation involves a substantially related matter in which that person's interests are materially and directly adverse to another client.[5]See Tex. Disciplinary R. Prof'l Conduct 1.06(b)(1). The Restatement of Law articulates an almost identical standard, providing that a lawyer in a civil case may not "represent two or more clients in a matter if there is a substantial risk that the lawyer's representation of one client would be materially and adversely affected by the lawyer's duties to another client in the matter...." Restatement (Third) of the Law Governing Lawyers, § 128 (Representing Clients *347 with Conflicting Interests in Civil Litigation) (2000).
Consistent with these guidelines, we hold that a trial court must determine whether there is a substantial risk that a lawyer's obligations to one parent would materially and adversely affect his or her obligations to the other parent when deciding whether there is a conflict of interest between parents opposing termination in a single suit.[6] In evaluating whether there is a substantial risk of a conflict of interest before trial, the trial court should consider the available record to determine the likelihood that the parents' positions will be adverse to each other. For example, when reviewing a record of pre-trial proceedings, the trial court may consider the Department's allegations in the petition against each parent, evidence adduced during pre-trial hearings, and the parents' statements and positions taken in the course of pre-trial proceedings. We review a trial court's determination of whether there was a conflict of interest for an abuse of discretion. See Metro. Life Ins. Co. v. Syntek Fin. Corp., 881 S.W.2d 319, 321 (Tex.1994); Allstate Ins. Co. v. Hunt, 469 S.W.2d 151, 153 (Tex.1971).
The Dosseys first requested separate trials at a pre-trial hearing. A review of the pre-trial record shows no substantial risk that Villarrial's representation of one parent would materially and adversely affect his representation of the other parent. The petition alleged grounds of endangerment against each of the Dosseys. These allegations permitted termination based not only on each parent's own conduct endangering the children, but upon each parent's knowing exposure of the children to one another's endangering conduct. See Tex. Fam.Code § 161.001(1)(D), (E). Consequently, evidence regarding Jimmy's conduct could tend to prove the grounds supporting Spring's termination, and vice versa. At all relevant times before trial, the Dosseys were married and living together. They hired one attorney to represent both of them when their children were first removed, and sought appointment of that attorney to represent both of them after he withdrew. The record does not reflect that, at any time before the pre-trial hearing, either parent blamed the other for conduct related to the termination, or that either would be willing or able to separate from the other to retain custody of the children. Because the parents have cited no evidence from the pre-trial record of an actual conflict between them, the trial court did not abuse its discretion in denying Villarrial's pre-trial motion to sever.
Further, the trial court did not err in determining that no actual conflict of interest had arisen when the Dosseys renewed their motion after the close of evidence. In fact, the evidence at trial establishes that the Dosseys' interests were aligned. Both parents testified that they were fully aware of the allegations against the other and that they continued to live and work toward reunification together, even after their children were removed. In particular, Spring testified that Jimmy was a good husband and a good parent, and that the two of them had "learned to pull together and try to work through [their] problems instead of splitting up and going separate ways...." She asserted this even though she testified that he had hit her "maybe three [or] four times" and that she was scared when he stole a handgun and started working as a drug informant. The only evidence suggesting that Spring's and Jimmy's interests diverged *348 was Spring's testimony that she would be willing to leave Jimmy if the court terminated only his rights. However, the jury was free to disbelieve that testimony. Alternatively, the jury could have concluded that even if she did legally separate from Jimmy, there would be no practical way to ensure that Spring and Jimmy would not reunite or to prevent Jimmy from exercising rights over the children. In evaluating whether an actual conflict of interest had arisen, the trial court would have known that these credibility determinations were within the province of the jury. In sum, the Dosseys did not establish that their interests conflicted to create a substantial risk that Villarrial could not represent effectively each of them in the same trial.
We acknowledge that a potential for conflicts of interest between parents challenging termination may always be present. However, the trial court's inquiry under the standard we articulate today is limited to whether there is an actual conflict of interest. We conclude that the trial court did not abuse its discretion in denying Villarrial's second motion for separate trials based on a conflict of interest.[7]

IV. The Jury Charge Complaint
In its second complaint, the Department contends that the court of appeals erred in holding that the jury charge was fatally defective. The trial court submitted a jury charge with the two statutory grounds alleged against the parents in the disjunctive, and with broad-form jury questions regarding whether the parent-child relationships should be terminated. See Tex.R. Civ. P. 277 (permitting the court to submit questions disjunctively and requiring broad-form questions "whenever feasible"). The court of appeals held that the charge violated the Dosseys' due process right to have at least ten jurors agree on either or both statutory grounds supporting termination. 56 S.W.3d at 217.
The Department argues that the court of appeals' holding contradicts this Court's holding in Texas Department of Human Services v. E.B., 802 S.W.2d 647 (Tex. 1990) (op. on reh'g). In E.B., we approved submission of a single broad-form question incorporating two statutory grounds for termination of parental rights submitted disjunctively. 802 S.W.2d at 649. We rejected the court of appeals' conclusion that the form of the verdict deprived the parent of the necessary jury agreement on the specific grounds supporting termination, holding that the "controlling question in this case was whether the parent-child relationship between the mother and each of her two children should be terminated, not what specific ground or grounds under [the statute] the jury relied on to answer affirmatively the questions posed." Id. While the court of appeals in this case states that E.B. does not control the resolution of this case, see 56 S.W.3d at 216 n. 15 (referring to the relevant discussion in E.B. as "dictum"), we observe that our courts of appeals are now divided on this issue.[8]

*349 A. Preservation
The Dosseys never objected to the form of the jury charge at trial. Under our procedural rules, the failure to raise a complaint at trial to a jury charge waives review of that complaint on appeal. See Tex.R.App. P. 33.1; Tex.R. Civ. P. 274. The court of appeals nevertheless reviewed the Dosseys' complaint about the jury charge, relying on its holding in In re J.F.C., which we reversed on other grounds. 56 S.W.3d at 215; see In re J.F.C., 57 S.W.3d 66, 72 (Tex.App.-Waco 2001), rev'd on other grounds, 96 S.W.3d 256 (Tex.2002).
In J.F.C., the court of appeals held that Fourteenth Amendment procedural due process concerns require review of "core issues" in the jury charge in involuntary termination cases even when the parties failed to object to the charge at the trial court. 57 S.W.3d at 72. Without addressing whether appellate courts could review the unpreserved charge error, this Court reversed the court of appeals' judgment in J.F.C. because we concluded that the evidence conclusively established one of the grounds for termination, making the alleged charge error harmless. 96 S.W.3d at 277-79. Unlike the evidence in J.F.C., the evidence in this case does not conclusively establish the predicate grounds for termination. Consequently, this case squarely presents the issue of whether the court of appeals could review the unpreserved charge error. As a rule, we only decide constitutional questions when we cannot resolve issues on nonconstitutional grounds.[9] Accordingly, we first determine whether our law on preservationincluding our rules of procedure and our common-law doctrine of fundamental error permit review of this jury charge complaint.

B. Texas Rules On Preservation
Our procedural rules state that any complaint to a jury charge is waived unless specifically included in an objection. Tex.R. Civ. P. 274; Tex.R.App. P. 33.1(a)(1). A party must make the trial court aware of the complaint, timely and plainly, and obtain a ruling. State Dep't of Highways & Pub. Transp. v. Payne, 838 S.W.2d 235, 241 (Tex.1992). The complaint in this case is that the disjunctive instruction and broad-form submission of the jury questions violated the Dosseys' alleged constitutional rights to have ten jurors agree on the specific statutory findings underlying the verdict.
This Court has recently emphasized that complaints of error in broad-form submission must be preserved by objection at trial. See Harris County v. Smith, 96 S.W.3d 230, 236 (Tex.2002) ("A timely objection, plainly informing the court that a specific element of damages should not be included in a broad-form question because *350 there is no evidence to support its submission, therefore preserves the error for appellate review."); Crown Life Ins. Co. v. Casteel, 22 S.W.3d 378, 389 (Tex.2000) (holding it is harmful error when a broad-form question erroneously commingles valid and invalid theories and an objection is "timely and specific"). In addition, we recently refused to review a complaint based on constitutional error that was not preserved in the trial court. See Texas Dep't of Protective & Regulatory Servs. v. Sherry, 46 S.W.3d 857, 861 (Tex.2001) (constitutional claim on appeal in paternity suit waived by failure to raise complaint at trial) (citing Dreyer v. Greene, 871 S.W.2d 697, 698 (Tex.1993)).
Important prudential considerations underscore our rules on preservation. Requiring parties to raise complaints at trial conserves judicial resources by giving trial courts an opportunity to correct an error before an appeal proceeds. In re C.O.S., 988 S.W.2d 760, 765 (Tex.1999). In addition, our preservation rules promote fairness among litigants. A party "should not be permitted to waive, consent to, or neglect to complain about an error at trial and then surprise his opponent on appeal by stating his complaint for the first time." Pirtle v. Gregory, 629 S.W.2d 919, 920 (Tex.1982) (per curiam). Moreover, we further the goal of accuracy in judicial decision-making when lower courts have the opportunity to first consider and rule on error. Not only do the parties have the opportunity to develop and refine their arguments, but we have the benefit of other judicial review to focus and further analyze the questions at issue. Accordingly, we follow our procedural rules, which bar review of this complaint, unless a recognized exception exists.

C. The Fundamental-Error Doctrine
A limited exception to our procedural preservation rules is the fundamental-error doctrine. See Ramsey v. Dunlop, 146 Tex. 196, 205 S.W.2d 979, 982-83 (1947). Historically, we have used the term "fundamental error" to describe situations in which an appellate court may review error that was neither raised in the trial court nor assigned on appeal. See, e.g., McCauley v. Consolidated Underwriters, 157 Tex. 475, 304 S.W.2d 265, 266 (1957) (per curiam). In light of our strong policy considerations favoring preservation, we have called fundamental error "a discredited doctrine." Cox v. Johnson, 638 S.W.2d 867, 868 (Tex.1982) (per curiam).
Nevertheless, we have employed fundamental error in rare instances to review certain types of unpreserved or unassigned error. First, we have reviewed unassigned error or error not raised by the parties when the record shows on its face that the court lacked jurisdiction. See McCauley, 304 S.W.2d at 266 (error is fundamental when the record shows a jurisdictional defect). In addition, we have applied the fundamental-error doctrine to review certain types of error in juvenile delinquency cases. See In re C.O.S., 988 S.W.2d at 767 (reviewing a trial court's failure to give mandatory statutory admonishments in a juvenile delinquency proceeding); State v. Santana, 444 S.W.2d 614, 615 (Tex.1969), vacated on other grounds, 397 U.S. 596, 90 S.Ct. 1350, 25 L.Ed.2d 594, on remand, 457 S.W.2d 275 (Tex.1970) (reviewing the constitutionality of the burden of proof instruction in a juvenile delinquency proceeding).
Our application of fundamental error in these last two cases rested on the "quasi-criminal" nature of juvenile delinquency cases. See C.O.S., 988 S.W.2d at 765 (characterizing a juvenile delinquency proceeding as "quasi-criminal" and analyzing the criminal rules on applying fundamental error); Santana, 444 S.W.2d at 615 *351 (observing that juvenile delinquency proceedings are not ordinary civil adversarial proceedings). Specifically, in C.O.S., we explained that it is "unwise and problematic to apply one preservation rule in adult, criminal proceedings and another, stricter rule in juvenile cases." 988 S.W.2d at 767. Texas criminal jurisprudence recognizes that certain types of error can be reviewed for the first time on appeal.[10] Tex.R. Evid. 103(d) ("In a criminal case, nothing in these rules precludes taking notice of fundamental errors affecting substantive rights although they were not brought to the attention of the court."); see C.O.S., 988 S.W.2d at 765-67 (describing certain substantive rights that criminal defendants cannot forfeit by the failure to preserve error in the trial court) (citing Marin v. State, 851 S.W.2d 275, 278-79 (Tex.Crim.App.1993) (en banc)).
However, this rationale does not support applying the criminal fundamental-error doctrine to parental rights termination cases. We consider juvenile delinquency cases to be "quasi-criminal" because under the Family Code, the Texas Rules of Evidence applicable to criminal cases and Chapter 38 of the Code of Criminal Procedure govern juvenile delinquency proceedings. Tex. Fam. Code § 51.17(c); In re M.A.F., 966 S.W.2d 448, 450 (Tex.1998). In contrast, our Rules of Evidence applicable to civil cases and our Rules of Civil Procedure govern termination proceedings. Tex. Fam.Code § 104.001 (civil rules of evidence apply to suits affecting the parent-child relationship except as otherwise provided); In re J.F.C., 96 S.W.3d at 262-63 (determining that Texas Rule of Civil Procedure 279 applies to judgment terminating parental rights); E.B., 802 S.W.2d at 648 (analyzing the application of Texas Rule of Civil Procedure 277 to a jury charge complaint in a termination case). Accordingly, because termination cases do not apply criminal procedural or evidentiary rules (that are only applicable to criminal cases), they do not necessarily incorporate the concomitant criminal fundamental-error doctrine.
In sum, we have not previously extended the fundamental-error doctrine to this area of the law, and we are not persuaded to do so here. We are aware of no precedent in either our criminal or civil jurisprudence that informs the court of appeals' conclusion that "core" jury charge issues in termination cases should be reviewed even when not preserved. Further, we cannot see any reasonable, practical, and consistent way of reviewing unpreserved complaints of charge error in termination cases that satisfies our narrow fundamental-error doctrine. We conclude that the fundamental-error doctrine does not permit appellate review of the complaint of unpreserved charge error in this case.

D. Due Process
Finally, we review the court of appeals' holding that due process requires appellate review of certain unpreserved complaints in parental rights termination cases. Observing that termination cases *352 implicate fundamental liberties, we begin with the premise that our proceedings to terminate parental rights must comply with the requirements of procedural due process. Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); In re J.F.C., 96 S.W.3d at 273. In Lassiter v. Department of Social Services, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), the United States Supreme Court established the analytical framework for determining whether the procedures for termination proceedings satisfy due process. The phrase "due process," although incapable of precise definition, expresses the requirement of fundamental fairness. Id. at 24, 101 S.Ct. 2153. What fundamental fairness requires in a particular situation is determined by "considering any relevant precedents and then ... assessing the several interests that are at stake." Id. at 25, 101 S.Ct. 2153.
As discussed above, this Court's precedents establish that our procedural rules bar review of unpreserved error except in very narrow circumstances. We have followed this rule when other constitutional rights are at stake. See, e.g., Callahan & Assocs. v. Orangefield Indep. Sch. Dist., 92 S.W.3d 841, 845 (Tex.2002) (per curiam) (concluding that court of appeals correctly held that litigant waived constitutional claim by not raising it at arbitration); Southwestern Elec. Power Co. v. Grant, 73 S.W.3d 211, 222 (Tex.2002) (refusing to consider constitutional open-courts claim that was not preserved in trial court). Moreover, we have declined to review unpreserved complaints even when a parent's constitutional interests are implicated. See Sherry, 46 S.W.3d at 861. Therefore, we presume that our rules governing preservation of error in civil cases comport with due process. Lassiter, 452 U.S. at 27, 101 S.Ct. 2153; see also Whitworth v. Bynum, 699 S.W.2d 194, 197 (Tex. 1985) ("A court begins by presuming a statute's constitutionality, whether the basis of the constitutional attack is due process or equal protection.").
Against this presumption, we assess the interests that are affected by our procedures for preservation of error. See Lassiter, 452 U.S. at 27, 101 S.Ct. 2153. In Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the United States Supreme Court stated that determining what process is due in a particular proceeding requires consideration of three factors: (1) the private interest affected by the proceeding or official action; (2) the countervailing governmental interest supporting use of the challenged proceeding; and (3) the risk of an erroneous deprivation of that interest due to the procedures used. Once the Eldridge factors are identified and balanced, the court must weigh those factors against the presumption that our preservation law does not permit review of error in civil cases. See Lassiter, 452 U.S. at 27, 101 S.Ct. 2153.
The private interest affected by a termination case is a parent's fundamental liberty interest in the care, custody, and control of his or her children. Troxel v. Granville, 530 U.S. 57, 65-66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); see In re J.F.C., 96 S.W.3d at 273. If the Department succeeds in terminating a parent's rights, the State will have "`worked a unique kind of deprivation.... A parent's interest in the accuracy and justice of the decision to terminate his or her parental status is ... a commanding one.'" Lassiter, 452 U.S. at 27, 101 S.Ct. 2153. Thus, the parent's interests generally will favor reviewing unpreserved error that might result in reversal of a judgment to terminate.
*353 The State's foremost interest in suits affecting the parent-child relationship is the best interest of the child. See Tex. Fam.Code § 153.001(a). "[U]ntil the State proves parental unfitness, the child and his parents share a vital interest in preventing erroneous termination of their natural relationship." Santosky, 455 U.S. at 760, 102 S.Ct. 1388. Accordingly, the State, because of its parens patriae interest in promoting the welfare of the child also shares the parent's interest in an accurate and just decision. See id. at 766, 102 S.Ct. 1388 (quoting Lassiter, 452 U.S. at 27, 101 S.Ct. 2153). In that regard, the State's interest favors reviewing unpreserved error that bears on the accuracy of the verdict.
However, the State also has a strong interest in ensuring that our trial courts have an opportunity to correct errors as a matter of judicial economy. See C.O.S., 988 S.W.2d at 765. In termination cases, judicial economy is not just a policyit is a statutory mandate. To ensure that children's lives are not kept in limbo while judicial processes crawl forward, the Legislature requires that termination proceedings conclude at the trial level within a year and a half from the date of a child's removal from the parent. See Tex. Fam. Code § 263.401 (providing that a trial court must dismiss a case within one year, but permitting one 180-day extension). If a final order is not rendered by that time, the suit must be dismissed. See id. In addition, the Legislature limits the time to collaterally or directly attack the validity of an order terminating parental rights until the sixth month after the date the order is signed. Id. § 161.211. The Legislature further requires appellate courts to accelerate review of these cases and prioritize them over all other civil cases. Id. § 109.002(a). Appellate review of potentially reversible error never presented to a trial court would undermine the Legislature's dual intent to ensure finality in these cases and expedite their resolution. See In re J.F.C., 96 S.W.3d at 304 (Schneider, J., dissenting) ("Texas's preservation of error rules promote the child's interest in a final decision and thus placement in a safe and stable home, because they preclude appellate courts from unduly prolonging a decision by appellate review of issues not properly raised in the trial court."). Therefore, the State's interests weigh heavily toward applying our procedural rules to bar review of unpreserved error. Cf. Santosky, 455 U.S. at 767-78, 102 S.Ct. 1388 (determining that an elevated standard of proof in termination proceedings does not create any burdens to the State's fiscal and administrative interests).
Finally, we assess the risk that the application of our preservation rules to bar review of unpreserved complaints will cause the parents to be erroneously deprived of their children. In accordance with Lassiter, we review the other state procedures that minimize the risk of erroneous deprivation. The Legislature has enacted a comprehensive statutory scheme to ensure that termination trials result in a correct decision. First, a petition to terminate parental rights must provide full notice to all parties involved and allege the statutory grounds for termination and that termination is in the child's best interest. Tex. Fam.Code §§ 102.008; 161.101. A trial court must appoint counsel for indigent parents opposing termination. Id. § 107.013(a)(1). A court may order involuntary termination only if the court finds that: (1) a parent has committed a predicate act or omission harmful to the child, and (2) termination is in the best interest of the child. Id. § 161.001. The court must ensure that these findings are made by clear and convincing evidencea standard of proof specifically intended, in view of *354 the constitutional interests at stake, to reduce the risk of erroneous terminations. Id.; see Santosky, 455 U.S. at 764-65, 102 S.Ct. 1388; In re G.M., 596 S.W.2d 846, 847 (Tex.1980). In addition, this Court has determined that any complaint that the evidence is legally or factually insufficient to support the findings necessary for termination is analyzed by a heightened standard of appellate review. See In re J.F.C., 96 S.W.3d at 265-66 (defining the standard of review for legal sufficiency); In re C.H., 89 S.W.3d 17, 25 (Tex.2002) (defining the standard of review for factual sufficiency).
In balancing these factors, we conclude that while the parents' and State's interests in obtaining review of unpreserved error may be high, the State's additional competing interest in protecting the best interests of the children through judicial economy, certainty, and finality is at least equally compelling. Because the Legislature and this Court have provided heightened procedural protections in termination cases, we believe there is a low risk that consistently applying our preservation rules will result in erroneous deprivation. We therefore conclude that the Eldridge factors do not rebut the presumption that our preservation rules comport with due process. As a general rule, due process does not mandate that appellate courts review unpreserved complaints of charge error in parental rights termination cases.
Our conclusion that due process does not require review of unpreserved complaints does not necessarily end our constitutional inquiry. In Lassiter, the U.S. Supreme Court held that the Constitution does not require the appointment of counsel in every termination proceeding. Lassiter, 452 U.S. at 31, 101 S.Ct. 2153. However, the Supreme Court acknowledged that in a given case, the Eldridge factors could be distributed differently such that due process may require the appointment of counsel. See id. (noting that "`due process is not so rigid as to require that the significant factors in informality, flexibility and economy must always be sacrificed'") (quoting Gagnon v. Scarpelli, 411 U.S. 778, 788, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973)); cf. Santosky, 455 U.S. at 757, 102 S.Ct. 1388 ("Retrospective case-by-case review cannot preserve fundamental fairness when a class of proceedings is governed by a constitutionally defective evidentiary standard."). Thus, in Lassiter, the Supreme Court conducted a specific factual inquiry into the circumstances of the parent's case to determine whether she was constitutionally entitled to counsel. See 452 U.S. at 33, 101 S.Ct. 2153.
Assuming that this fact-specific due process analysis under Lassiter controls the evaluation of our preservation rules, we acknowledge that in a given parental rights termination case, a different calibration of the Eldridge factors could require a court of appeals to review an unpreserved complaint of error to ensure that our procedures comport with due process. In fact, today in In re M.S., we hold that if appointed counsel unjustifiably fails to preserve a sufficiency challenge for appellate review, under some circumstances that failure could amount to a due process violation. In re M.S., 115 S.W.3d 534, 548 (Tex.2003).
However, we do not have such concerns in this case. The Dosseys do not claim that Villarrial's failure to preserve charge error constituted ineffective assistance. Indeed, the record demonstrates that Villarrial zealously acted to protect the Dosseys' interests and that he preserved various evidentiary and sufficiency points for appellate review. Furthermore, the charge in this case follows our precedent in E.B., tracks the statutory language of the Family Code, and comports with *355 Texas Rules of Civil Procedure 277 and 292. Under these circumstances, we hold that a court of appeals must not retreat from our error-preservation standards to review unpreserved charge error in parental rights termination cases. The court of appeals therefore erred in reviewing the unpreserved complaint on the jury charge.

V. Conclusion
For these reasons, we reverse the judgment of the court of appeals. The Dosseys raised additional issues to the court of appeals that were not addressed below, including factual and legal sufficiency challenges to the evidence. Consequently, we remand this case to the court of appeals for further proceedings consistent with this opinion.
NOTES
[1] The trial court's charge is set out, in relevant part, below. The instruction was followed by four questions asking whether each parent's rights should be terminated as to each child.

For the parent-child relationship to be terminated in this case, it must be proved by clear and convincing evidence that the parent has done at least one of the following:
A. Knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children;
B. Engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children;
For the parent-child relationship to be terminated in this case, it must also be proved by clear and convincing evidence that termination of the parent-child relationship would be in the best interest of the children.
....
QUESTION [1-4]
Should the parent-child relationship between [PARENT] and [CHILD] be terminated?
Answer "Yes" or "No."
[2] While the Dosseys' brief to the court of appeals framed and argued this issue primarily in terms of whether the trial court should have appointed separate counsel, they also stated as an alternative that the trial court should have granted separate trials to remedy the conflict of interest between them.
[3] Villarrial referred to a motion to sever, but his argument made clear that he was seeking a cure for the alleged conflict of interest in the form of separate trials. Motions for severance and motions for separate trials seek different relief. Compare Tex.R. Civ. P. 41 with Tex.R. Civ. P. 174(b). However, a party moving to sever may seek separate trials as an alternative form of relief. See Kansas Univ. Endowment Ass'n v. King, 162 Tex. 599, 350 S.W.2d 11, 19 (1961) ("A severable cause of action may be tried separately under the provisions of Rule 174, but an issue that might properly be the subject of a separate trial is not necessarily severable.").
[4] Today, in In re M.S., 115 S.W.3d 534, 2003 WL 21512654 (Tex.2003), we decide that the statutory right to counsel in termination cases implicitly includes a right to effective assistance of counsel. That decision is consistent with our opinion here that, unless the parents otherwise consent, the statute also provides for nonconflicted counsel in termination cases.
[5] However, clients may waive conflicts of interest and retain a single attorney to jointly represent them in trial by consenting after "full disclosure of the existence, nature, implications, and possible adverse consequences of the common representation and the advantages involved, if any." Tex. Disciplinary R. Prof'l Conduct 1.06(c).
[6] We do not suggest, however, that a trial court may require parents to be represented by separate appointed counsel against their wishes.
[7] Because we determine that there was no conflict of interest between the parents, we do not consider their claim that they were entitled to separate counsel. In addition, our determination obviates the need to address whether the Dosseys could have stated a constitutional claim for ineffective assistance of counsel based on such a conflict.
[8] See In re J.M.M., 80 S.W.3d 232, 249 (Tex. App.-Fort Worth 2002, pet. denied), disapproved of on other grounds by In re J.F.C., 96 S.W.3d 256, 267 n. 39 (Tex.2002) ("[W]e cannot agree with the B.L.D. [court of appeals'] majority opinion that broad-form jury charge submissions are per se violative of due process in termination cases."); In re K.S., 76 S.W.3d 36, 49 (Tex.App.-Amarillo 2002, no pet.) ("We are bound to follow E.B. unless the Texas Supreme Court overrules or vitiates it."); In re M.C.M., 57 S.W.3d 27, 31 n. 2 (Tex.App.-Houston [1st Dist.] 2001, pet. denied) (acknowledging the holding in [the court of appeals in] B.L.D. but concluding that "E.B. has not been overruled, and this Court must follow it[]").
[9] See, e.g., In re C.H., 89 S.W.3d 17, 25 n. 1 (Tex.2002) (declining to decide a due process question because the Court decided the case on nonconstitutional grounds); Pack v. Fort Worth, 557 S.W.2d 771, 772 (Tex.1977) (per curiam) (determining that the constitutionality of a city ordinance was unnecessary to resolve the case). The United States Supreme Court articulated this principle in 1837 and has cited it since as sound judicial practice. See Proprietors of Charles River Bridge v. Proprietors of Warren Bridge, 36 U.S. 420, 553, 11 Pet. 420, 9 L.Ed. 773 (1837); Peters v. Hobby, 349 U.S. 331, 338, 75 S.Ct. 790, 99 L.Ed. 1129 (1955); Neese v. Southern Ry. Co., 350 U.S. 77, 78, 76 S.Ct. 131, 100 L.Ed. 60 (1955); Alma Motor Co. v. Timken-Detroit Axle Co., 329 U.S. 129, 142 & n. 15, 67 S.Ct. 231, 91 L.Ed. 128 (1946).
[10] Our current civil doctrine of fundamental error is a creature of common law. In contrast, article 36.19 of the Code of Criminal Procedure establishes the standard for reviewing fundamental error in a criminal court's charge. Jimenez v. State, 32 S.W.3d 233, 238 (Tex.Crim.App.2000). Specifically, that statute provides that when charge error has not been preserved in accordance with the requirements found in articles 36.14 through 36.18, "the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial." Tex.Code Crim. Proc. art. 36.19.