

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00781-CV

**IN THE INTEREST OF H.J.C.**, H.B.H., and K.C., Children

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2023PA00756
Honorable Tina Torres, Judge Presiding[1]

Opinion by: Lori Massey Brissette, Justice

Sitting: Lori Massey Brissette, Justice
Adrian A. Spears II, Justice
H. Todd McCray, Justice

Delivered and Filed: April 16, 2025

AFFIRMED

This case involves the termination of parental rights relating to three children, H.B.H., H.J.C., and K.C.[2] Mother and Father both assert that there is insufficient evidence demonstrating that termination of their rights is in the best interests of the children. Because no post-trial motions were filed to preserve sufficiency challenges, both parents assert ineffective assistance of counsel.

---

[1] On July 11, 2024, Cause Number 2024-PA-00059 was consolidated into Cause Number 2023-PA-00756 so that the parental rights of both Mother and Father to all three children could be adjudicated in one trial. The action was docketed in the 57th District Court but was ultimately tried before District Judge Tina Torres of the 407th District Court.

[2] To protect the identity of the minor children, we will refer to appellants as "Mother" and "Father" and to the children by their initials. *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8.

## BACKGROUND

On May 18, 2023, the Department of Family and Protective Services filed its Original Petition for Protection of a Child, for Conservatorship, and for Termination in a Suit Affecting the Parent-Child Relationship. The first petition involved only H.J.C., then ten months old, as she was the only child in the home at the time. A week later, the Department amended its petition to include reference to H.B.H., then three years old, as she was found living at a friend of her father's. [3] Later, almost a year after Mother gave birth to K.C. and a separate action was filed, the two causes were consolidated.

The trial court granted the Department temporary managing conservatorship and ordered the removal of the children. H.B.H. was allowed to remain with the family friend, G.M., who had been taking care of her for eight months prior to the Department's involvement. H.J.C. and K.C. were placed together in a foster home. The parents were provided a Family Service Plan which set out steps they needed to take to demonstrate the ability to meet the needs of their children and to regain custody. The original trial setting in April 2024 was reset to provide the parents a six-month extension—additional time to work the services as required by the plan. In October 2024, a five-day jury trial was held and, based on the jury's verdict, an Order of Termination was signed and entered by the court on November 12, 2024.

Termination was rendered pursuant to Texas Family Code section 161.001(b)(1)(D), 161.001(b)(1)(E) and 161.001(b)(1)(O). The court also found that termination was in the best interest of the children pursuant to Texas Family Code section 161.001(b)(2). No post-trial motions were filed, but a notice of appeal followed. On appeal, both parents assert that the evidence was insufficient to support termination of their parental rights.

---

[3] H.B.H.'s father voluntarily relinquished his parental rights during the trial. The Father referenced herein is the biological father of H.J.C. and K.C.

### INEFFECTIVE ASSISTANCE OF COUNSEL

First, we must address whether the parents may challenge the sufficiency of evidence on appeal. After a jury trial, a party is required to preserve the argument that the evidence is legally insufficient by objecting before the case is submitted to the jury, making a motion for directed verdict, or through post-trial motions. TEX. R. CIV. P. 324(b)(2); TEX. R. APP. P. 33.1(a); *In re D.T.*, 625 S.W.3d 62, 75 n.8 (Tex. 2021). A factual sufficiency challenge can be preserved through a motion for new trial. TEX. R. CIV. P. 324(b)(2). Neither parent, here, took the necessary actions to preserve a sufficiency challenge. *See In re E.M.E.*, No. 04-22-00273-CV, 2022 WL 17660991, at *2 (Tex. App.—San Antonio Dec. 14, 2022, no pet.) (overruling mother's challenge to sufficiency of best-interest finding because it was not preserved). Both parents, however, assert that the failure to so preserve is due to the ineffective assistance of counsel.

There is a "presumption that our preservation rules comport with due process," including in cases involving the potential termination of parental rights. *In re B.L.D.*, 113 S.W.3d 340, 354 (Tex. 2003); *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). Furthermore, we are mindful that "allowing appellate review of unpreserved error would undermine the Legislature's intent that cases terminating parental rights be expeditiously resolved, thus '[p]romot[ing] the child's best interest in a final decision and thus placement in a safe and stable home.'" *In re L.M.I.*, 119 S.W.3d 707, 711 (Tex. 2003) (*quoting B.L.D.*, 113 S.W.3d at 353). When a sufficiency challenge "was not preserved for review as otherwise required by our rules of procedure, we consider this issue in conjunction with [an appellant's] complaint that her appointed counsel was ineffective." *In re M.S.*, 115 S.W.3d 534, 536 (Tex. 2003). This is because the procedural rules governing sufficient preservation do not "give way to constitutional due process considerations" unless counsel's failure to preserve a sufficiency challenge "rises to the level of ineffective assistance." *Id.* at 549.

Therefore, here we "must engage in a review using the established *Strickland* standards." *Id.* (referencing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

To successfully assert an ineffective assistance of counsel claim, a parent must satisfy the two-prong test articulated in *Strickland*. 466 U.S. 668 at 687; *In re D.T.*, 625 S.W.3d 62, 73 (Tex. 2021). *Strickland* requires the parent appealing the termination to show (1) trial counsel's performance fell below an objective standard of reasonableness, and (2) the parent was prejudiced by trial counsel's defective performance. *In re J.A.B.*, 562 S.W.3d 726, 729 (Tex. App.—San Antonio 2018, pet. denied) (*citing Strickland*, 466 U.S. at 687). In applying the *Strickland* test, we will review all circumstances surrounding the case to determine whether counsel provided reasonable professional assistance. *In re J.M.O.*, 459 S.W.3d 90, 93 (Tex. App.—San Antonio 2014, no pet.). We will provide great deference to counsel's performance, indulging a strong presumption that counsel's conduct is reasonable and that his or her actions were strategic in nature. *Id.* Because the "record" requirement established in *Strickland* applies to parental termination cases, "allegations of ineffective assistance of counsel in a parental-rights termination proceeding must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *In re A.L.*, No. 04-17-00620-CV, 2018 WL 987484, at *8 (Tex. App.—San Antonio Feb. 21, 2018, no pet.). We will "not speculate to find trial counsel ineffective when the record is silent regarding counsel's reasons for his actions." *In re F.L.H., IV*, No. 04-17-00425-CV, 2017 WL 6597829, at *15 (Tex. App.—San Antonio Dec. 27, 2017, pet. denied) (quoting *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 623 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). "It is only when the conduct was so outrageous that no competent attorney would have engaged in it,' that the challenged conduct will constitute ineffective assistance." *M.S.*, 115 S.W.3d at 545 (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim.

App. 2001)). Further, "to show prejudice, an appellant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *J.M.O.*, 459 S.W.3d at 94 (cleaned up); *see also Strickland*, 466 U.S. at 694.

## ANALYSIS

The removal of these children occurred after numerous referrals (between November 2022 and the end of January 2023) giving rise to concerns relating to ongoing domestic violence between the parents in the presence of the children, the use of illegal drugs in the presence of the children, and Mother's mental health and its impact on the children.[4] Mother has a criminal history involving three prior incidents of assault family violence and has had her parental rights terminated to six children before the three involved in this matter. Another child of Mother's, the seventh in age among the ten, is in the sole managing custody of his father. Father, too, has been investigated by the Department relating to drug use while another child, not the subject of this suit, was in his care. Father has served over twenty years for an assault that led to a person's death and was incarcerated during the pendency of this matter for a terroristic threat made to a previous partner.

Both Mother and Father were active on Facebook Live, demonstrating at times the use of drugs and the handling of weapons while the children were present. At other times, Mother would post videos of her screaming at people in the street, demonstrating a mental health crisis. When

---

[4] In December 2022, Mother was arrested on an active warrant for assault and bodily injury after the police intervened in a physical argument between Mother and Father. In January, a referral was made because Mother punched Father in the face, busting his lip and requiring police intervention. At the time, Father was alleged to be using drugs while the children were in his care and Mother's mental health caused her to be hospitalized. The next referral, in the same month, alleged the physical abuse of another child, not made the subject of this suit, with him showing cuts, marks and bruises. That child was placed with his father. The third referral arose out of a welfare check because Father alleged Mother was shaking the two-year-old child and threatening to hurt her. Mother was placed on an emergency detention by police due to her mental health. In March 2023, a referral was made by the father of H.B.H. because Mother called him threatening to put H.B.H. in the oven if he didn't pick her up. Another time, Mother went on Facebook Live with her daughter and stated that if someone didn't "come get this bitch," she'd put her in the microwave and burn her. Finally, also in March 2023, a referral was made because Father was using methamphetamines and alcohol and having a mental health episode while children were in his care.

Mother testified at trial, she had a hard time detailing the birthdates of her children and stated she does not believe she needs to be on medication for her diagnosed mental health disorders.

The oldest child, H.B.H., was placed with a friend of her father's, G.M. G.M. testified that Mother gave her the child with no expectation of a return without knowing her full name, where she lived or where she worked. "The conversation was that she just wanted [H.B.H.] to be happy, that she had been in foster care, and she had been through some things and that she was still going through some things." G.M. had H.B.H. for over eight months prior to the Department seeking to ensure removal and, after the Department assessed her and her home, she was determined to be an appropriate placement.[5] When she came to G.M., H.B.H. had nodules on her arms that were infected, toenails that were overgrown, bad diaper rash, and a yeasty smell in her mouth due to sucking her finger. She would shake and cling to a teddy bear and run to hide if someone knocked on the door. After visits with Mother, G.M. stated that H.B.H. would pee herself on the ride home, was quiet and would suck her finger. Now, G.M testified that H.B.H. has been attending therapy, has stopped sucking her finger, has stopped bed wetting, is very confident, loves to cook, enjoys school, seeks the certainty of a schedule and loves to have her hair combed and to get dressed up.

The other two children, H.J.C. and K.C., were placed in a foster home that is now wishing to adopt them. H.J.C. is now in dance classes and K.C. is walking, eating solid foods, and getting physical therapy for low muscle tone.

Both Mother and Father were given an opportunity to work towards reunification through the Family Violence Prevention Program, a program that provides a faster, more intensive program

---

[5] Notably, during her care of H.B.H., G.M. was attacked at a gas station and the incident was not only videotaped by Mother and Father wherein they could be heard egging on the fight, but they posted it to the internet.

and a dedicated team focused on supporting them and providing all necessary services. But, because of positive drug tests and missed classes, they were discharged from that program.

Further, there was testimony about concerns during the child visits, specifically about the failure to parent appropriately and a lack of engagement. For example, while the children stepped on the baby, no redirection took place. Mother was focused on her phone during the visits. When one of the little girls asked her for a hug, Mother gave her a toy to play with instead. Mother even took a nap at one point during a visit. Mother and Father missed almost half of the visits provided to them.

Neither parent has a stable home or employment. While they engaged in classes, they were asked to repeat classes because, despite completing them, their behaviors did not change. Neither followed through on recommendations to address their mental health issues. Father refused to take drug tests asked of him. And, both had positive drug tests during the pendency of the case.

## CONCLUSION

It is evident from the record before us that the jury's verdict is supported by more than ample evidence and that counsel may have reasonably chosen not to assert a sufficiency challenge for that reason. *See J.M.O.*, 459 S.W.3d at 93; *M.S.*, 115 S.W.3d at 545. Further, given the trial record, appellants cannot demonstrate prejudice as a result of their counsel's failure to advance such an argument. *See A.L.*, 2018 WL 987484, at *8; *J.M.O.*, 459 S.W.3d at 94. Given the overwhelming proof in support of the jury's finding that termination was in the best interests of the children, we cannot find that the counsel for Mother or Father acted unreasonably in failing to preserve a sufficiency challenge. *See J.A.B.*, 562 S.W.3d at 729. For that reason, we affirm the trial court's judgment.

Lori Massey Brissette, Justice