

# Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00576-CV

**IN THE INTEREST OF C.R.**, a Child

From the 2nd 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 21-0032-CV-A
Honorable Jessica Crawford, Judge Presiding

Opinion by:  Irene Rios, Justice
Concurring Opinion by: Lori Massey Brissette, Justice

Sitting:  Irene Rios, Justice
  Lori Massey Brissette, Justice
  Adrian A. Spears II, Justice

Delivered and Filed: March 25, 2026

AFFIRMED

This appeal arises from a divorce proceeding between appellant James Rothrock and appellee Shelby Rothrock. The parties had one child during the marriage. In the divorce suit, a jury found by a preponderance of the evidence that the appointment of James as a possessory conservator is not in the child's best interest. The trial court adopted the jury's findings and concluded that granting James possession of or access to the child would endanger the physical or emotional welfare of the child. Consequently, the trial court named Shelby the sole managing conservator of the child and denied James possession of and access to the child.

On appeal, James argues the trial court's order denying him rights, possession of, or access to the child is essentially a termination order and such a finding must be supported by clear and convincing evidence. In his first three issues, which we construe as a single issue, James contends the jury charge erroneously instructed the jury that its findings could be based on a preponderance of the evidence. We conclude James waived appellate review of this issue when he failed to object to the jury charge at trial.

In his last issue, James argues the trial court impermissibly permitted the jury to answer questions on a specific term or condition of possession of or access to the child in violation of section 105.002(c)(2)(B) of the Texas Family Code. We hold the trial court properly submitted the conservatorship question to the jury and the trial court denied James possession and access based on the jury's refusal to name him a conservator of the child. Stated differently, the trial court properly concluded James was not entitled to possession of or access to the child because he was neither a managing nor possessory conservator of the child. To the extent, James complains about the wording in the jury charge, we conclude he has waived review of this issue as well. We affirm the trial court's final divorce decree.

### BACKGROUND

James and Shelby were married on June 7, 2014. They had one child, C.R., during the marriage. On January 5, 2021, Shelby filed a petition for divorce. In her petition, Shelby alleged James had engaged in a history or pattern of family violence, child abuse, and child neglect. Shelby requested she be appointed sole managing conservator and requested the court deny James possession of and access to the child or, in the alternative, that possession be supervised.

The parties successfully mediated the division of marital assets, leaving only issues regarding care, custody, and control of the child. Based on James's request, the conservatorship

issue was tried to a jury. The jury charge conference was conducted off the record; however, the trial court came back on the record to ask the parties if they had any objections to the jury charge. Both parties stated they had no objections to the jury charge. The jury charge instructed the jury to answer questions based on a preponderance of the evidence and submitted five questions to the jury. Only the first two jury questions are relevant to this appeal.

The first question asked whether the parties should be named joint managing conservators or whether only one parent should be named sole managing conservator. The jury answered Shelby should be named the sole managing conservator of the child. The second question asked whether the non-managing conservator parent should be named a possessory conservator. The jury answered "No." Thus, the jury found by a preponderance of the evidence that James should not be named a managing or possessory conservator of the child.

After the jury was dismissed, the trial court entered a final divorce decree. The trial court adopted the jury's findings that naming James as possessory conservator was not in the best interest of the child and that his possession of or access to the child would endanger the physical or emotional welfare of the child. The trial court named Shelby as the sole managing conservator and ordered that James would not be named a conservator of the child. In the possession and access section of the final divorce decree, the trial court found that awarding James possession of or access to the child would endanger the child's physical or emotional welfare and is not in the best interest of the child. Critically, the trial court ordered that James shall not have any possession of or access to the child based on the jury's verdict that James is not a conservator of the child. James appeals.

**JURY CHARGE ERROR: PRESERVATION**

James argued his first three issues together and stated they are related and arise from the same issues of evidentiary standards and the implications of due process. "[T]he quantum of proof required to support a termination decision differs from the level necessary to support a conservatorship appointment." *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). "Termination decisions must be supported by clear and convincing evidence." *Id.* "Due process compels this heightened standard because terminating the parent-child relationship imposes permanent, irrevocable consequences." *Id.* On the other hand, a finding that appointment of a parent as a possessory conservator is not in the best interest of the child and that parental possession or access would endanger the physical or emotional welfare of the child is governed by a preponderance-of-the-evidence standard. *See* TEX. FAM. CODE ANN. §§ 105.005, 153.191; *see also J.A.J.*, 243 S.W.3d at 616 (stating the burden of proof to support a conservatorship finding is by a preponderance of the evidence).

James argues the trial court's order denying him conservatorship, possession, and access is tantamount to a parental termination and could only be supported by clear and convincing evidence. Because the trial court instructed the jury to base its findings on a preponderance of the evidence, and the trial court adopted the jury's findings, James argues the trial court's order violates his right to due process. Importantly, James's entire argument focuses on whether the trial court instructed the jury to use the correct burden of proof. However, James does not argue the evidence is insufficient to support the jury's findings. Thus, the issue before us is one of jury charge error.

"Under our procedural rules, the failure to raise a complaint at trial to a jury charge waives review of that complaint on appeal." *In re B.L.D.*, 113 S.W.3d 340, 349 (Tex. 2003). "A party

must make the trial court aware of the complaint, timely and plainly, and obtain a ruling." *Id.* Here, James concedes he did not object to the trial court's jury instructions and therefore did not preserve error. Instead, James argues we should review his unpreserved error under the fundamental-error doctrine because due process requires a higher burden of proof to deny possession of and access to his child. We disagree on two fronts.

First, we are skeptical of James's argument that the trial court's order here is tantamount to termination of his parental rights. The supreme court has already rejected a parent's argument that denying a parent possession and access to their child is a *de facto* termination of parental rights. *See J.A.J.*, 243 S.W.3d at 617. The supreme court reasoned that even though the parent may be denied conservatorship, and thereby possession of or access to the child, the trial court nevertheless "retains jurisdiction to modify a conservatorship order if it is in the child's best interest, and the parent's or child's circumstances have materially and substantially changed since the order was rendered." *Id.* (citing TEX. FAM. CODE ANN. §§ 156.001, 156.101). In contrast, an order that actually terminates a parent's parental rights to his or her child "is traumatic, permanent, and irrevocable" constituting the "'death penalty' of civil cases." *In re D.T.*, 625 S.W.3d 62, 69 (Tex. 2021) (noting the difference between an order that infringes on a parent's right to care and make decisions for the child and an order that permanently and irrevocably terminates all rights to the child forever). Here, James's rights to his child, although severely infringed, are not permanently and irrevocably severed. Thus, this case cannot be equated to a termination case.

To support his contention that the trial court should have instructed a higher burden of proof, James also points us to the supreme court's recent decision in *Stary v. Etheridge*, 712 S.W.3d 584 (Tex. 2025). In *Stary*, the trial court signed a permanent protective order prohibiting all contact between a parent and her children. *Stary v. Etheridge*, 712 S.W.3d 584, 588

(Tex. 2025). The parent asserted on appeal that the protective order was tantamount to a termination order and argued that the trial court erred by not employing a clear-and-convincing burden of proof to support its decision. *Id.* The supreme court agreed holding that "trial court['s] rendering a protective order exceeding two years against a parent must (1) make the requisite findings for an order to exceed two years under a clear and convincing standard and (2) consider the best interest of the child." *Id.* at 595–96. However, there are several distinguishing consequences of the protective order in *Stary* that are not present in this case: (1) the protective order was permanent for the duration of the parent's life, even after the children reached majority; (2) the protective order prevented all contact and imposed criminal penalties even if the children wanted to contact the parent; (3) the order could only be reviewed twice, solidifying its permanency; and (4) the supreme court put much emphasis on the fact that the protective order would last greater than two years. *Id.* at 590–92. Given these considerations, the protective order in *Stary* is more akin to a "traumatic, permanent, and irrevocable" deprivation of rights that requires a heightened burden of proof. *See D.T.*, 625 S.W.3d at 69. The same cannot be said in this case given James's ability to seek modification at any time so long as he can show a parent's or the child's circumstances have materially and substantially changed since the order was rendered.

Second—even if we were to accept James's contention that the trial court's order was tantamount to termination, which we do not—supreme court precedent prohibits us from reviewing unpreserved charge error and has rejected the fundamental-error doctrine exception in actual termination proceedings. *See B.L.D.*, 113 S.W.3d at 355 ("Under these circumstances, we hold that a court of appeals must not retreat from our error-preservation standards to review unpreserved charge error in parental rights termination cases.").

As mentioned above, our procedural rules provide that any complaint to a jury charge is waived unless the complaining party made the trial court aware of the complaint through a timely objection and obtained a ruling. *Id.* at 349, 354 ("As a general rule, due process does not mandate that appellate courts review unpreserved complaints of charge error in parental rights termination cases.") "A limited exception to our procedural preservation rules is the fundamental-error doctrine." *Id.* at 350. "In light of the [the supreme court's] strong policy considerations favoring preservation, [the supreme court has] called fundamental error 'a discredited doctrine.'" *Id.* (quoting *Cox v. Johnson*, 638 S.W.2d 867, 868 (Tex. 1982)). In *B.L.D.*, the supreme court noted that it has only applied the fundamental-error doctrine in two situations to review unpreserved error. *B.L.D.*, 113 S.W.3d at 350.

First, the supreme court reviewed unpreserved error under the fundamental-error doctrine "when the record shows on its face that the court lacked jurisdiction." *Id.* This is self-evident because the reviewing court must determine it has jurisdiction before it can rule on a case.

Second, the supreme court has "applied the fundamental-error doctrine to review certain types of error in juvenile delinquency cases" because they are "quasi-criminal" cases, and it would be "unwise and problematic to apply one preservation rule in adult, criminal proceedings and another, stricter rule in juvenile cases." *Id.* at 350–51. "However, this rationale does not support applying the criminal fundamental-error doctrine to parental rights termination cases." *Id.* at 351. Courts "consider juvenile delinquency cases to be 'quasi-criminal' because[,] under the [Texas] Family Code, the Texas Rules of Evidence applicable to criminal cases and Chapter 38 of the Code of Criminal Procedure govern juvenile delinquency proceedings." *Id.* "In contrast, our Rules of Evidence applicable to civil cases and our Rules of Civil Procedure govern termination proceedings." *Id.* "Accordingly, because termination cases do not apply criminal procedural or

evidentiary rules (that are only applicable to criminal cases), they do not necessarily incorporate the concomitant criminal fundamental-error doctrine." *Id.*

The supreme court concisely concluded:

> In sum, we have not previously extended the fundamental-error doctrine to this area of the law, and we are not persuaded to do so here. We are aware of no precedent in either our criminal or civil jurisprudence that informs the court of appeals' conclusion that "core" jury charge issues in termination cases should be reviewed even when not preserved. Further, we cannot see any reasonable, practical, and consistent way of reviewing unpreserved complaints of charge error in termination cases that satisfies our narrow fundamental-error doctrine. We conclude that the fundamental-error doctrine does not permit appellate review of the complaint of unpreserved charge error in this case.

*Id.*

Accordingly, we hold James did not preserve his appellate complaint when he failed to object to the jury charge at trial. Following supreme court precedent, we decline to extend the fundamental-error doctrine to review unpreserved, alleged jury charge error in this case.

James's first three issues are overruled.

**QUESTIONS REGARDING A SPECIFIC TERM OR CONDITION OF POSSESSION AND ACCESS**

In his last issue, James argues the trial court impermissibly submitted a question to the jury on issues of a specific term or condition of possession of or access to the child. However, the record does not support James's contention, and he has waived review of this issue because he failed to object to the jury charge.

The jury question James complains about simply asked if James should be named a possessory conservator. The family code permits the trial court to submit a question to the jury regarding the appointment of a possessory conservator. *See* TEX. FAM. CODE ANN. § 105.002(c)(1)(C) ("In a jury trial . . . a party is entitled to a verdict by the jury and the court may not contravene a jury verdict on the issues of . . . the appointment of a possessory conservator."). James complains that within the jury question, the jury was instructed to answer "'Yes' unless you

find from a preponderance of the evidence that appointment of [the non-managing conservator parent] is not in the best interest of the child and that possession or access by that parent would endanger the physical or emotional welfare of the child."

First, to the extent James complains about the alleged additional instruction in the conservatorship question, we note that James failed to preserve error on this issue as well and has waived his appellate complaint. *B.L.D.*, 113 S.W.3d at 349 ("Under our procedural rules, the failure to raise a complaint at trial to a jury charge waives review of that complaint on appeal.").

Second, the jury question tracks the statutory language in section 153.191 of the family code, which provides that a parent who is not appointed a managing conservator must be appointed a possessory conservator unless there is a finding that the appointment is not in the child's best interest and that parental possession or access would endanger the child's physical or emotional welfare. *See* TEX. FAM. CODE ANN. § 153.191. Further, to the extent James argues the jury was not permitted to answer the possession or access portion of this question, we note that in the possession and access section of the final divorce decree, the trial court's only reference to the jury's verdict is the jury's finding that James is not to be named a conservator of the child, which was a proper question for the jury.[1] Based on the jury's conservatorship finding, the trial court concluded James was not entitled to any possession of or access to the child. Thus, the record negates James's contention that the jury decided an issue on a specific term or condition of possession of or access to the child.

James's fourth issue is overruled

---

[1] The final divorce decree states:

> The Court FINDS that awarding [James] possession of and/or access to the child would endanger the child's physical and/or emotional welfare, and are not [] in the best interest of the child. The Court FURTHER FINDS that based on the Jury Verdict that [James] is not a Conservator of the child, [] IT IS ORDERED that [James] shall not have any possession of and/or [access] to the child, C.R.

**CONCLUSION**

We affirm the trial court's final divorce decree.

Irene Rios, Justice