In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-06-124 CV


____________________



IN THE INTEREST OF R.H. AND S.H. 






On Appeal from the 359th District Court


Montgomery County, Texas


Trial Cause No. 05-11-10004-CV






 MEMORANDUM OPINION 


 We must decide two issues in this parental-rights termination case. We must
determine whether fundamental error occurred when certain statutory deadlines were not
satisfied after the children were taken into protective custody. Second, we must decide
whether the parents were denied the effective assistance of counsel because at trial their
attorneys failed to object to the participation of an attorney for the foster parents. We
overrule both issues raised by the parents and affirm the trial court's judgment.



Background

 Appellants, Virginia Hood and Robert Hood (the "Hoods"), are the parents of R.H.
and S.H., the children who are the subject of this suit. (1) On October 20, 2005, the Texas
Department of Family and Protective Services (the "Department") removed the children from
the Hoods' custody without first obtaining a court order. The Department filed its original
petition to terminate the Hoods' parental rights on November 10, 2005. On that same day,
the trial court approved the Department's emergency removal, entered emergency temporary
orders, and scheduled a date for the full adversary hearing. The trial court also appointed
separate counsel for Virginia and Robert. On November 22, 2005, the trial court conducted
a hearing, heard the testimony presented by the parties, and appointed the Department as
temporary managing conservator. (2) No written order regarding this hearing appears in the
record. 

 The Department previously removed the children from the Hoods in March 2004. 
After counseling and completion of other tasks required by the Department, the children were
returned to the Hoods sixteen months later on July 22, 2005. During this period, the children
were placed in the foster home of Lisa and Salvador Vasquez. In the subsequent October
2005 removal that is the subject of this dispute, the children were again placed in the
Vasquezes' home. 

 After a bench trial, the trial court terminated the Hoods' parental rights on March 17,
2006. We do not find in the record that the Hoods complained of the Department's timing
with respect to the removal of the children or the progression of the case, including the
Department's failure to provide them with a family service plan. (3) Soon after trial, the Hoods
filed notices of appeal and sought the appointment of new appellate counsel. Neither party
filed a motion for new trial.

 On appeal, the Hoods complain of two issues. First, the Hoods assert that their due
process rights were violated by:

 a. the Department's failure to timely file its original petition affecting the parent-child relationship and the trial court's failure to conduct the initial hearing no
later than the first working day after October 20, 2005;

 b. the trial court's failure to order the return of the children or issue an
appropriate temporary order because it did not hold a full adversary hearing
within fourteen days of October 20, 2005; and

 c. the Department's failure to provide the Hoods with a service plan within forty-five days of the trial court's appointment of the Department as temporary
managing conservator.

See Tex. Fam. Code Ann. §§ 262.105; 262.106; 263.101 (Vernon 2002); 262.201 (Vernon
Supp. 2006). Second, the Hoods assert their attorneys were ineffective because these
procedural errors were overlooked and because the foster parents, without objection, were
allowed to participate in the trial as intervenors. 

Fundamental Error/Due Process Complaint

 The Hoods complain that the Department's failure to follow the requirements set forth
in sections 262.105, 262.106, 262.201, and 263.101 of the Family Code violated their due
process rights. The Texas Supreme Court describes the relationship between a parent and
a child as a constitutionally protected right "far more precious than property rights." Holick
v. Smith, 685 S.W.2d 18, 20 (Tex. 1985). As a result, we carefully review child termination
cases and strictly construe involuntary termination statutes in the parents' favor. See id. 
Nevertheless, the constitutional dimension of the parent-child relationship does not
automatically override the procedural requirements for error preservation. See In re B.L.D.,
113 S.W.3d 340, 354 (Tex. 2003).

 Generally, to preserve error for appellate review, a party must present the complaint
to the trial court by a timely request, objection, or motion. Tex. R. App. P. 33.1(a)(1). Except
in cases of recognized exceptions, even constitutional complaints occurring in the trial court
are waived if not properly preserved. See B.L.D., 113 S.W.3d at 350. The Hoods failed to
bring the complaints they now raise on appeal to the trial court's attention. To avoid the
affect of their waiver, the Hoods argue that the complaints they now raise should be reviewed
under the fundamental-error doctrine. 

 In B.L.D., the Texas Supreme Court refused to extend the fundamental-error doctrine
to parental-rights termination cases and held that termination cases are unlike juvenile
delinquency cases and do not apply criminal procedural or evidentiary rules. Id. at 351. 
With respect to the Hoods' due process complaints, the rules governing error preservation
must be followed in cases involving termination of parental rights, as in other cases in which
a complaint is based on constitutional error. See In re K.A.F., 160 S.W.3d 923, 928 (Tex.
2005), cert. denied, 126 S.Ct. 483 (2005). We hold that the fundamental-error exception
does not apply to the complaints that the Hoods now attempt to raise for the first time on
appeal, and that due process does not require that we review the Hoods' unpreserved
complaints. We overrule the Hoods' first issue.

Ineffective Assistance of Counsel

 The Hoods argue in their briefs that their attorneys were ineffective because they did
not require strict compliance with the procedural requirements of the Family Code as
described in their first issue. They further contend that their attorneys were ineffective
because they failed to object to the foster parents' participation at trial. The Hoods assert that 
an intervention is a necessary prerequisite to the trial court's allowing the foster parents'
participation in the trial court. 

Applicable Law

 The Texas Supreme Court has held that the statutory right to counsel in parental-rights
termination cases includes the right to effective counsel. In re M.S., 115 S.W.3d 534, 544
(Tex. 2003); see also Tex. Fam. Code Ann. § 107.013(a)(1) (Vernon Supp. 2006). In
evaluating the effectiveness of counsel, the Court adopted the Strickland test that sets
standards for effective assistance in criminal cases. See M.S., 115 S.W.3d at 545 (citing
Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

 Under Strickland, to prevail on a claim of ineffective assistance of counsel, an
appellant must show that trial counsel's performance fell below an objective standard of
reasonableness, and that a reasonable probability exists that, but for trial counsel's errors, the
result would have been different. See Strickland, 466 U.S. at 687-88, 694. The appellant
must successfully satisfy both prongs of the test. See M.S., 115 S.W.3d at 545.

 To determine whether a trial attorney's performance was deficient, "we must take into
account all of the circumstances surrounding the case, and must primarily focus on whether
counsel performed in a 'reasonably effective' manner." Id. (quoting Strickland, 466 U.S. at
687). We must indulge in the strong presumption that counsel's conduct fell within the wide
range of reasonable professional assistance. M.S., 115 S.W.3d at 545; see also Strickland,
466 U.S. at 689. Challenged conduct constitutes ineffective assistance only when the
conduct is so outrageous that no competent attorney would have engaged in it. M.S., 115
S.W.3d at 545; Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001); Thompson v.
State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

 To satisfy the second prong of the test, the appellant must show that his attorney's
defective assistance caused harm. See M.S., 115 S.W.3d at 549-50. The test is whether
"there is a reasonable probability that, but for counsel's unprofessional error(s), the result of
the proceeding would have been different." Id. (quoting Garcia, 57 S.W.3d at 440).

Complaint Regarding Procedural Errors

 The Hoods' trial attorneys' alleged ineffectiveness is not apparent from the record. 
Additionally, the Hoods provide no evidence that their trial attorneys rendered ineffective
assistance by not objecting to the Department's failure to adhere to statutory guidelines. At
the point the Department removed the children in October 2005, the children had only been
in the Hoods' possession for the previous three months because of the Department's previous
removal of the children in March 2004. Moreover, the Hoods' complaints do not undermine
the jurisdiction of the court; they relate to the procedures to be followed upon a child's
removal from his parents. Procedural complaints that cannot be remedied on appeal can
generally be remedied through mandamus. See In re B.T., 154 S.W.3d 200, 207 (Tex.
App.-Fort Worth 2004, no pet.); In re E.D.L., 105 S.W.3d 679, 687-89 (Tex. App.-Fort
Worth 2003, pet. denied). The circumstances of this case include: 1) this was the
Department's second removal of the children; 2) the Hoods had a pre-existing history with
the Department; and 3) the Hoods received a trial on the merits of the termination case. 
Therefore, under these circumstances, the conduct of the Hoods' trial counsel was not
unreasonable. 

Failure to Object to Vasquezes' Participation at Trial

 The Hoods' chief ineffective assistance of counsel claim concerns the court's allowing
the foster parents' participation at trial as intervenors without first filing an intervention in
the case. Lisa Vasquez testified that she filed a plea in intervention on November 7, 2005. 
However, the record before us does not contain any intervention. The Department filed its
original petition in this case on November 10, 2005. Because the Department had filed a
prior proceeding, it appears that the intervention mentioned in Lisa's testimony was likely
filed in the prior case involving the first removal of the children. 

 The Hoods point to nothing specific in the record in support of their argument that
an attorney's failure to object to the foster parents' participation at trial was so outrageous
that no competent attorney would have failed to object. Rather, they generally state the harm
was irreparable because the Vasquez family desired to adopt the children. Nonetheless, 
under these circumstances it is apparent that had the Hoods' attorneys objected, the trial court
would have allowed the Vasquezes to correct the erroneous filing. See First Alief Bank v.
White, 682 S.W.2d 251, 252 (Tex. 1984) (intervention generally may be filed any time before
judgment rendered). We also note that the Family Code specifically provides for the foster
parents' involvement in matters concerning children under their care. See Tex. Fam. Code
Ann. § 102.003(a)(12) (Vernon Supp. 2006) (provides foster parents standing to file original
petition for suit affecting parent-child relationship); see also Tex. Fam. Code Ann. §
263.301(b) (Vernon 2002) (foster parents entitled to notice and right to present evidence and
be heard at permanency hearing). Thus, a reasonable attorney could have anticipated the
Vasquezes' participation in all facets of this case, including trial, and there is no showing that
anyone was surprised that they were allowed to participate in the trial proceeding at issue.

 The record in the court below shows no surprise. Counsel for the Hoods extensively
cross-examined Lisa and lodged a number of objections to portions of her testimony. During
opening and closing arguments, the attorneys for the Hoods attempted to use the Vasquezes'
participation in the case to their advantage, and contended that the Vasquezes' participation
reflected a bias because the Vasquezes' goal was to adopt the children. Even if the
Vasquezes had not been a formal party to the case, the Department could have called Lisa
as a witness at trial. A trial with Lisa's participation as a witness but not as a party would,
as in this case, contain her considerable testimony regarding her involvement with the
children. We hold that the Hoods have failed to overcome the presumption that their trial
counsels' performances fell outside the range of reasonable assistance, and that their
counsels' decisions were not tactical decisions. See M.S., 115 S.W.3d at 545. Therefore, we
find that any failure to object to the Vasquezes' participation at trial did not result in
ineffective assistance. Because the Hoods' counsels' failure to object to the Department's
statutory compliance and the Vasquezes' participation at trial were not ineffective assistance,
we need not address the harm prong of the Strickland test. See id. at 546. We overrule the
Hoods' ineffective assistance of counsel issue and affirm the judgment of the trial court.

 AFFIRMED.


 ____________________________

 HOLLIS HORTON

 Justice



Submitted on October 10, 2006

Opinion Delivered November 30, 2006

Before McKeithen, C.J., Kreger and Horton, JJ.
1. Virginia Hood and Robert Hood separately appeal from the trial court's ruling. 
However, both Virginia and Robert are represented by the same appellate counsel and filed
identical briefs with this Court. Therefore, we address their issues together.
2. The Supplemental Record indicates that a hearing occurred on November 22,
2006. We assume "2006" is a typographical error and that the hearing actually occurred
on November 22, 2005.
3. The Department concedes no family service plan was provided in relation to the
October 2005 removal; however, the Department argues a plan was not required under the
circumstances.