**DISSENTING and Opinion Filed August 31, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-20-00340-CV

## IN THE INTEREST OF A.E.J., L.S.J., AND D.M.J., CHILDREN

**On Appeal from the 301st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-17-19493**

## DISSENTING OPINION

Before Chief Justice Robert D. Burns, III, Justice Molberg, and Justice Nowell
Dissenting Opinion by Chief Justice Robert D. Burns III

Because the majority ignores decades of precedent from other Texas appellate courts allowing a party to challenge a trial court's failure to appoint an attorney ad litem in a private termination of parental rights case for the first time on appeal and glosses over evidence in the record favorable to Father to reach its desired waiver conclusion, I must dissent.

### Preservation under § 107.021

Our legislature determined that in privately brought lawsuits in which parental rights are subject to termination, the trial judge "shall" appoint an ad litem or amicus attorney, unless "the court finds that the interests of the child will be represented adequately by a party to the suit whose interests are not in conflict with the child's

interests . . . ." TEX. FAM. CODE ANN. § 107.021(a-1) (emphasis added). In the context of termination, an ad litem represents only the child's interests—not those of either parent. *Id.; see also* TEX. FAM. CODE ANN. §107.004 ("[A]ttorney ad litem appointed for a child shall, in a developmentally appropriate manner: (1) advise the child; (2) represent the child's expressed objectives of representation and follow the child's expressed objectives of representation during the course of litigation if the attorney ad litem determines that the child is competent to understand the nature of an attorney-client relationship and has formed that relationship with the attorney ad litem . . . .").

Prior to today, the failure by the parent subject to termination to request or complain about the absence of an ad litem has had no impact on the child's entitlement to representation. Accordingly, I would conclude *the children's* entitlement to an ad litem was not waived by father's failure to object to such error prior to trial. My conclusion is supported by other intermediate appellate courts in Texas that have addressed this issue. Simply stated, failure to appoint an ad litem may be raised for the first time on appeal. *See In re D.M.O.*, No. 04-17-00290-CV, 2018 WL 1402030, at *2 (Tex. App.—San Antonio Mar. 21, 2018, no pet.) (mem. op.); *In re K.M.M.*, 326 S.W.3d 714, 716 (Tex. App.—Amarillo 2010, no pet.) ("The failure to comply with section 107.021 is error that cannot be treated as harmless due to the serious nature of the proceedings involved."); *Chapman v. Chapman*, 852

S.W.2d 101, 102 (Tex. App.—Waco 1993, no writ); *Turner v. Lutz*, 654 S.W.2d 57, 58 (Tex. App.—Austin 1983, no writ); *Arnold v. Caillier*, 628 S.W.2d 468, 470 (Tex. App.—Beaumont 1981, no writ).

The majority relies heavily on the waiver analysis in *In re B.L.D*, 113 S.W.3d 340 (Tex. 2003). That case, however, addressed waiver of jury charge error by parents *represented by counsel*. *Id*. at 349. There is simply no basis to apply that analysis here, and the majority fails to provide authority or logical reasoning why "we follow the same analysis." Furthermore, that case was reversed on grounds other than the waiver error addressed by the supreme court. Instead, the majority dismisses the above-cited cases holding otherwise because "the right to an ad litem was *simply described as one of constitutional magnitude* [by those courts] with no analysis regarding whether due process rights were unfairly restricted by enforcing our waiver rules." How much analysis is necessary to explain a child's right to appointment of an ad litem to protect his or her interest during a termination proceeding of constitutional magnitude?[1] Moreover, Father's due process rights have no bearing on whether the children were entitled to an ad litem attorney. The risk to Father that he would be erroneously deprived of his parental rights is not the

---

[1] Section 107.021 commands the court to appoint, but gives the trial court discretion to refrain under a limited circumstance. As discussed later, I disagree with the trial court's conclusory finding that mother's interests were not in conflict with the children's interests thereby alleviating the trial court of its duty to appoint an ad litem.

risk the statute attempts to alleviate. Instead, section 107.021(a-1) seeks to protect *the children* from an erroneous deprivation of the interest and involvement in their lives of one of their parents. And while the conflict inherent in one parent's attempting to terminate one parent's rights is obvious, it is exacerbated when it is part of a divorce action, as is the case here.

For the sake of indulgence, even if I agreed the *B.L.D*. due process analysis should be applied under these facts, which I do not, I cannot agree with the majority's application of the facts to this case and its ultimate conclusion that enforcing preservation rules does not violate Father's due process rights. Like the majority, I agree the first due process factor, Father's "fundamental liberty interest in the care, custody, and control of his children," favors reviewing unpreserved error.

To the extent the majority discusses *B.L.D.*'s second due process factor, the State's dual but competing interests, it is important to note the State did not seek termination in this case. Rather, Mother sought termination as part of her petition for divorce (again exposing the majority's misplaced reliance on *B.L.D.*'s due process analysis). Regardless, continuing to indulge in the majority's due process analysis, it asserts best interest of the child favors the review of unpreserved error if necessary to ensure "an accurate and just result," *but* best interest also "requires a heightened concern for judicial economy manifested as a prompt and final resolution of termination cases." Although the second factor does consider judicial economy,

4

I would hold that best interest cannot be sacrificed for judicial economy and prompt resolution when a trial court ignores a statute put in place to ensure the best interests of a child are considered, and that child's constitutional rights protected, during termination proceedings.

Further, judicial economy *was* protected here because the trial court had the opportunity to correct its error. *See In re B.L.D*., 113 S.W.3d at 353 (noting strong interest in trial court's opportunity to correct errors as a matter of judicial economy). Father's counsel, who first appeared after the judgment was rendered, raised the court's failure to appoint an ad litem and failure to make the finding regarding Mother's ability to represent the children's interests, in Father's motion for new trial—the first pleading filed on Father's behalf by counsel and the first pleading after the finding was issued in the FFCL.[2]  Although a motion for new trial comes late in the termination process, raising an error of this magnitude before the judgment becomes final for purposes of appeal promotes the State's interest in providing a trial court the opportunity to correct errors as a matter of judicial economy. The majority's contrary view defeats that purpose and is needlessly punitive.  Thus, unlike the majority, I conclude this factor likewise weighs in Father's favor.  Because two of the three *B.L.D*. due process factors weigh in Father's favor, I would conclude father preserved his argument for appellate review regarding the trial court's failure

---

[2] Father was indigent when the case was filed, and pro se at trial.

to appoint an ad litem. Waiver did not occur. *See, e.g., In re B.L.D.*, 113 S.W.3d at 349 ("A party must make a trial court aware of a complaint, timely and plainly, and obtain a ruling.").

## Conflict of Interest under § 107.021

Section 107.021 requires the appointment of a guardian ad litem "*unless* the court finds the interests of the child will be represented adequately by a party to a suit whose interests are not in conflict with the child's interests." TEX. FAM. CODE ANN. § 107.021(a-1) (emphasis added). Only after rendering judgment did the trial court issue the following conclusory and inadequate finding:

> Prior at [sic] the pretrial hearing, the Court considered whether the appointment of an Ad Litem for the three children was necessary and concluded per 107.021 that it was not necessary because their interests would be adequately represented by a party whose interests were not in conflict with the children's. In making this determination, the Court considered the limited resources of the parties and the complexity of the litigation and that the primary issue in this case would be the credibility of the evidence presented at trial. Consequently, no appointment was made.

I conclude the record does not support this finding.

First, there is no record of the three pretrial hearings. When a hearing occurs but no transcript is prepared, and absent specific indications to the contrary, we presume the hearing was not evidentiary. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 783 (Tex. 2005). In such an instance, we also presume the trial court considered any evidence in its file at that time supporting its finding. *Id.*

6

Father disputes the issue was actually considered during any of the three pretrial hearings as reflected in the trial court's docket. The docket supports Father's assertion.[3] I recognize the docket itself is generally only a memorandum for the court's and clerk's convenience, *see Garza v. Tex. Alcoholic Beverage Comm'n*, 83 S.W.3d 161, 167 (Tex. App.—El Paso 2000), *aff'd*, 89 S.W.3d 1 (Tex. 2002), but presuming the finding was supported by evidence that we are unable to conclude was on file at the time the trial court made the undated finding, requires the Court to presume too much.

Even indulging in such unfair presumptions, however, the only possible evidence the trial court could have relied on pretrial was the custody evaluator's report filed months after the first two pretrial hearings but several months in advance of the final hearing. The report provides no support for the finding. To the contrary, although Mother was undoubtedly motivated to protect Z.W.'s interests in seeking a divorce and precluding further interaction between Z.W. and Father, the report emphasized the parties' contradictory assertions about whether the abuse occurred and numerous observations that Father was a "great father" to his children.

---

[3] The docket reflects pretrial hearings on July 9, 2018, September 10, 2018, and August 8, 2019. The custody evaluator's report was filed on May 16, 2019, and trial occurred on December 2, 2019. None of the notations in the docket related to those hearings reference an ad litem or issues or determinations regarding an ad litem. Notations in the docket regarding these hearings are as follows: July 9, 2018 (both parties attended; "Order – pay social study fees; comment fees due August 1"); September 10, 2018 (both parties attended; "Order- Family Court Services"); August 8, 2019 (both parties attended; no further docket notation regarding this hearing).

The majority ignores or glosses over the children's interests in this case. It misleads the reader to conclude the children are too young to have an opinion or too young to have an opinion that should be considered, boldly claiming "our record does not include specific evidence regarding any of the children's desires." The report shows that is simply not true.

The custody evaluator spent many hours with family members and wrote a thorough and balanced report. He met with the parties and the children eleven times over a six-month period and documented his independent observations. When he met with the biological children he observed the following:

- The ten-year-old daughter, A.J., feels good about Father and shares a close bond.

- A.J. stated that when the children were little, they always had fun, played make up games and enjoyed funny moments with Father.

- She said Father has never engaged in behavior that made her feel uncomfortable.

- A.J. sometimes cried when speaking about Father.

- She said Father "is a very funning [sic] and loving man" (next to a heart shaped drawing).

- L.J., the seven-year-old, reported that if she had three wishes, she would wish to see Father; she does not have any other wish.

Later in the report, the custody evaluator described another home visit to Father's and his girlfriend's house. The children cried when they saw Father, and he hugged them. The five-year-old boy cried when Mother came to pick them up

8

because he wanted to spend more time with father. The evaluator further noted Father "seems patient with the children and attended to their needs. He seems to love the children and appears to be a hard worker."

The custody evaluator ultimately concluded, "it does not appear that termination of the father's parental rights to the children in question will be in their best interests, but the challenge is how to ensure that the children are protected given what happened to Z.W. The children are undoubtedly comfortable with the mother and desire to have a relationship with their father." The evaluator concluded that Father should have supervised visits. Clearly, there is a substantial amount of evidence, especially in the context of a divorce, that Mother's interests do not align with the children's interest.

In light of this evidence, I would accordingly conclude the trial judge abused her discretion in finding no conflict existed. *See In re D.M.O.*, 2018 WL 1402030, at *4 ("[W]hen one parent is attempting to terminate the parental rights of another parent, the very nature of the case requires the father and mother to litigate their personal interests.") (internal quotation and alternation omitted); *In re K.M.M.*, 326 S.W.3d at 715 ("Indeed it has been recognized that where parents are adversaries in a suit to terminate one parent's rights, the trial court can seldom find that one party adequately represents the interests of the children involved or that their interests are not adverse."); *Chapman*, 852 S.W.2d at 102 (trial court could not have found "that

9

the interests of the child will be represented adequately by a party to the suit and are not adverse to that party . . . because each party was strongly advocating his or her own interests"); *Barfield v. White*, 647 S.W.2d 407, 409 (Tex. App.—Austin 1983, no writ) ("[W]e cannot accept the trial court's determination that the interests of this five-year-old child were adequately represented when both parties were strongly advocating their own interests."); *Turner v. Lutz*, 654 S.W.2d 57, 58 (Tex. App.— Austin 1983, no writ).

In reaching this conclusion, I reject the cases relied on by the majority because they are factually distinguishable. In *In re B.W.*, the mother sought termination because of the father's history of family violence, some of which occurred in the presence of the child. Father was in and out of jail and had numerous positive drug tests for various illegal drugs. Mother testified the father "hadn't been a father. He's had five years to be a father and he hasn't." *In re B.W.*, No. 02-19-00009-CV, 2019 WL 2041808, at *3 (Tex. App.—Fort Worth May 9, 2019, no pet.) (mem. op.). Mother believed it was in the best interest for her current husband to raise her child and "teach him the way of life" because she "didn't see [father] doing that." *Id.* The daughter in *In re C.A.P.* asked the mother to file the termination suit against her father because she no longer wanted to associate with him after learning about his sexual abuse history. Father in that case was in prison for sixteen different counts of sexual assault. *In re C.A.P.*, No. 04-12-00553-CV, 2014 WL 749825, at *2 (Tex.

10

App.—San Antonio Feb. 27, 2013, pet. denied) (mem. op.). The record in *In re T.L.W.* contained the children's attitudes and feelings toward their father, among other things, that supported the trial court's finding that no ad litem was necessary. The father in that case was frequently incarcerated and was currently incarcerated serving a prison sentence. Further, and perhaps most importantly, the trial court actually interviewed the children in chambers to find out the children's viewpoint. *In re T.L.W.*, No. 12-10-00401-CV, 2012 WL 1142475, at \*3 (Tex. App.—Tyler Mar. 30, 2012, no pet.) (mem. op.). The record before us in the instant case indicates Father wanted to be involved with his children, he made the effort when given the opportunity, and the children enjoyed their time with him. In other words, the evidence conflicted with Mother's interest in terminating Father's parental rights because it supported denying the application for termination of his parental rights.

The final case cited by the majority is distinguishable from this case because the record reflected that the mother's primary interest was to protect the child from the father. *See In re R.J.C.*, No. 04-09-00106-CV, 2010 WL 816188, at \*2 (Tex. App.—San Antonio Mar. 10, 2010, no pet.) (mem. op.). In that case, appellant was in prison for aggravated sexual assault of a six-year-old child, was in prison when the child was born, and had no relationship with the child. There was also evidence in that record of appellant abusing several children. *Id.* Here, the evidence shows

Father had a strong relationship with his children. By failing to appoint the children an ad litem, the trial court failed to protect the children's interests in that relationship.

Further, although this case and *R.J.C.* involve mothers wanting to protect their children from a father's acts against another child, I cannot reach the same conclusion under our facts. The interests of the three biological children are different from the stepdaughter's interests. There are no allegations here that Father did anything inappropriate with his biological children. The biological children clearly want a relationship with their Father. Accordingly, I would conclude that the trial court abused its discretion by finding that Mother's interests did not conflict with the children's interests. The findings of fact and conclusions of law are wholly conclusory and ignore substantial and important evidence in the record below.

Because the trial court denied the children their statutory right to an ad litem to protect their interest in the termination proceeding, I would sustain Father's second issue, reverse the portion of the final judgment that orders termination of the parental rights between Father and the children, and remand for a new trial.

/Robert D. Burns, III/
ROBERT D. BURNS, III
CHIEF JUSTICE

200340DF.P05

12