**Affirmed in Part, Reversed and Remanded in Part and Opinion Filed May 4, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-01223-CV**

**IN THE INTEREST OF D.C., A CHILD**

**On Appeal from the 304th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. JC-20-00985-W**

## MEMORANDUM OPINION

Before Justices Pedersen, III, Goldstein, and Smith
Opinion by Justice Goldstein

This is an appeal from the trial court's order terminating Father's parental rights to, and appointing the Texas Department of Family and Protective Services (Department) as managing conservator of, minor child D.C.[1] In seven issues, Father contends the evidence was legally and factually insufficient to support the trial court's (1) findings that Father's rights should be terminated pursuant to Family Code §§ 161.001(b)(1)(E) and 161.001(b)(1)(O); (2) best-interest finding; and (3) appointment of the Department as D.C.'s managing conservator. We affirm in

---

[1] The trial court also terminated Mother's parental rights. Mother has not filed a notice of appeal. Therefore, the portions of the trial court's order pertaining to Mother's parental rights are not before us.

part, reverse in part, and remand for a new trial in this memorandum opinion. *See* TEX. R. APP. P. 47.2(a).

## BACKGROUND

D.C. was born on November 15, 2020. At the time of her birth, both D.C. and Mother tested positive for methamphetamines. Upon her birth, D.C. was admitted into the neonatal intensive care unit (NICU) and remained there for two months. D.C. had trouble feeding due to prenatal exposure to methamphetamine. She also required neurological and ophthalmological care.

The Department was notified of the positive drug results and became involved on November 16, 2020. The Department contacted Father, who stated that he wanted to have D.C. placed with him. Father had signed an affidavit of paternity at the hospital. The Department requested that Father submit to a drug test. Father's hair follicle test returned positive for methamphetamine and marijuana.

On December 2, 2020, the Department filed its original petition for protection, conservatorship and termination. The Department sought termination of Mother's parental rights. The Department alleged that it had made, and would continue to make, "reasonable efforts to eliminate the need for the child's removal and to enable the return of the child to the parent." The Department also alleged that Father was D.C.'s father and, in the alternative, that the identity and location of D.C.'s father was unknown. The Department sought termination of Father's parental rights and,

in the event that Father's paternity of D.C. could not be established, termination of the rights of the unknown father.

The trial court entered an ex parte order for emergency care and temporary custody and appointed the Department as D.C.'s temporary managing conservator. Mother filed a general denial, requesting that the case be dismissed and that D.C. be returned to her care. Father filed a motion for DNA testing to determine his paternity. The trial court granted the motion on December 31, 2020, and Father submitted DNA samples shortly thereafter. While the results were pending, on January 14, 2021, the trial court entered a temporary order following adversary hearing pursuant to § 262.201 of the Family Code. The trial court ordered Father to undergo psychological evaluation, attend counseling, attend parenting classes, and submit to drug testing "if and when he is adjudicated as the father of the child the subject of this suit." D.C. was released from the NICU on January 21, 2021 and placed in foster care.

On April 7, 2021, the results of Father's DNA test were filed with the trial court. The report confirmed Father's parentage of D.C. Two weeks later, the trial court entered an interlocutory order adjudicating Father's parentage. On May 24, 2021, Father filed his original answer and counter-petition for conservatorship. Father requested that he be appointed managing conservator, or alternatively that his parents be appointed managing conservators and he be appointed as the possessory conservator.

The case was tried to the court on October 19, 2022. After the close of evidence the trial court found that termination was in D.C.'s best interest and warranted under §§ 161.001(b)(1)(E) and (b)(1)(O) of the Family Code. The trial court entered final judgment terminating Father's parental rights under those sections and appointing the Department as D.C.'s permanent managing conservator. Father timely appealed.

## DISCUSSION

Father raises seven issues on appeal. In his first four issues, Father challenges the legal and factual sufficiency of the trial court's findings that his parental rights should be terminated pursuant to §§ 161.001(b)(1)(E) and (b)(1)(O). In his fifth and sixth issues, Father asserts that the evidence was legally and factually insufficient to support the trial court's finding that termination was in D.C.'s best interest. In his seventh issue, Father asserts that the evidence was legally and factually insufficient to support the trial court's order appointing the Department as D.C.'s permanent managing conservator.

## I. STANDARD OF REVIEW

Because the fundamental liberty interest of a parent in the care, custody, and control of his or her child is one of constitutional dimensions, involuntary parental termination must be strictly scrutinized. *See Troxel v. Granville*, 530 U.S. 57, 65–66 (2000); *In re K.M.L.*, 443 S.W.3d 101, 112 (Tex. 2014). A trial court may order involuntary termination of parental rights only if the court finds that (1) the parent

has committed one or more of the statutory enumerated predicate acts or omissions, and (2) termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b); *see also In re S.Y.*, 435 S.W.3d 923, 927 (Tex. App.—Dallas 2014, no pet.). "Given the constitutional magnitude of the interests at stake, the trial court's findings must be made by clear and convincing evidence to reduce the risk of erroneous terminations." *Id.* (citing *In re B.L.D.*, 113 S.W.3d 340, 351–52 (Tex. 2003)).

The supreme court has identified the appropriate standards for appellate courts reviewing the legal and factual sufficiency of findings made under this heightened burden of proof. *See In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002) (defining the standard of review for legal sufficiency); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002) (defining the standard of review for factual sufficiency). In both instances, we ask whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the matter on which the department bears the burden of proof. *J.F.C.*, 96 S.W.3d at 265–66; *C.H.*, 89 S.W.3d at 25. However, in *J.F.C.*, the Court explained that we must approach the evidence differently in legal and factual sufficiency reviews. When reviewing legal sufficiency, we look at the evidence in the light most favorable to the finding. In the clear-and-convincing context, this means we must assume that the factfinder resolved disputed facts in favor of its finding, if a reasonable factfinder could do so. *J.F.C.*, 96 S.W.3d at 266. We must disregard all evidence that a reasonable factfinder could have disbelieved or found

incredible. *Id.* We do not, however, disregard undisputed facts that do not support the finding. *Id.* When reviewing factual sufficiency, we must give "due consideration" to any evidence the factfinder could reasonably have found to be clear and convincing. *Id.* This means we must look at the disputed evidence and adjudge whether a reasonable factfinder could have resolved that evidence in favor of the finding. The evidence is factually insufficient if, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction. *Id.*

## II. DISCUSSION

### A. Family Code § 161.001(b)(1)(E)

In his first two issues, Father asserts that there was legally and factually insufficient evidence to support the trial court's findings under § 161.001(b)(1)(E) of the Family Code. The Department argues that the record reveals that Father "physically and emotionally endangered D.C. through his habitual drug use, temperament, and lifestyle."

Subsection (E) authorizes termination if the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E). In this context, "endanger" means to expose to loss or injury, or to jeopardize a child's emotional or physical well-being. *In re J.W.*, 645 S.W.3d 726,

748–49 (Tex. 2022); *In re C.V. L.*, 591 S.W.3d 734, 750 (Tex. App.—Dallas 2019, pet. denied). Ground (E) "refers only to the parent's conduct, as evidenced not only by the parent's acts, but also by the parent's omissions or failures to act." *In re C.V. L.*, 591 S.W.3d at 750. Termination under § 161.001(b)(1)(E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *Id.*

At the outset, we note that there is a dearth of evidence pertaining to Father's conduct and his relationship with Mother prior to D.C.'s birth. This deficiency is important because the relevant time frame within which to determine whether there is clear and convincing evidence of endangerment to the child is before the child was removed. *In re J.K.F.*, 345 S.W.3d 706, 711 (Tex. App.—Dallas 2011, no pet.). The record reflects that when D.C. was born, she was immediately placed in the NICU and remained there for two months. During that time, the Department filed for and was granted temporary conservatorship. After being discharged from the hospital, the Department placed D.C. with a foster family, who maintained possession throughout the pendency of the proceedings below. Father was granted visitation, but nothing in the record suggests he did anything during visitation to endanger D.C.'s physical or emotional well-being.

In the absence of such evidence, the Department argues that Father's conduct following D.C.'s removal "would have" endangered D.C.'s well-being. In support, the Department cites evidence in the record that Father was charged with assault and

–7–

compelling prostitution; altercations between Father and Mother, Father and his neighbors, and Father and other women; and Father's angry outbursts, verbal abuse, and threats toward Department personnel and mental health professionals. The record before us, however, is remarkably scant on details. For example, the criminal charges were still pending at the time of this trial, and there was no evidence offered about the underlying facts of the criminal case. Absent any evidence that Father engaged in the conduct for which he was charged, we cannot conclude that a reasonable fact-finder could have formed a firm belief or conviction that the alleged conduct endangered D.C.'s well-being. *See J.F.C.*, 96 S.W.3d at 266.

Moreover, much of the evidence on which the Department relies was about Mother's misconduct, not Father's. For example, the Department cites the testimony of Latisha Redman, the Department case worker assigned to the case, stating that Father called the police twice because Mother had thrown soda cans at him. Redman also testified that Father texted her photographs of his car with bullet holes in it, stating that Mother had shot at him while he was in the car.[2] The Department urges us to hold this conduct against Father because he "continued to associate" with Mother after D.C.'s removal. We decline to do so as the record is not fully developed about the parties' post-removal relationship. During Father's cross-examination by D.C.'s attorney ad litem, the following exchange occurred:

---

[2] Neither the text message nor the photographs were introduced in evidence.

Q: And, you stated that you and [Mother] stayed in contact through the pendency of this case; is that right?

A: Of course. We have a child together.

Q: Okay. And, you said right now you have a good relationship with her?

A: Yes.

Q: Have you always had a good relationship with her?

A: Yes.

Q: Okay. Did you have a good relationship with her in February of 2021 when you called the police on her, and said that she was knocking on your door, and threw a Dr. Pepper can at you?

A: She didn't throw a Dr. Pepper can at me, more, like, the window. But, yes, I mean, I could only say -- this is what I will say. It's just a --

[D.C.'s counsel]: I'm going to object, Your Honor; nonresponsive.

THE COURT: Sustained.

Q (By [D.C.'s counsel]): The question was: Did you have a good relationship with her when you called the police on her when she would not leave your home?

A: I don't know how to answer that, ma'am.

Q: Okay. Did you have a good relationship with her when she called the police on you and said that you hit her with a car?

A: No, I definitely didn't have a good relationship with her then.

We cannot determine from this exchange, or indeed anywhere else in the record, whether these calls to the police were the result of the same or separate altercations.[3]

---

[3] We note that February 2021 was three months after D.C.'s birth, two months after her removal, and one month after Father filed a motion for DNA testing. It was also the same month that D.C. was placed in foster care. The record is inadequate to establish Mother and Father's post-birth relationship or whether this exchange evidences Father's active avoidance of Mother.

It is therefore impossible to determine whether the violent conduct the Department attributes to Father was based on a single act or a voluntary course of conduct. *See In re C.V. L.*, 591 S.W.3d at 750.

Finally, the Department argues that the trial court's endangerment finding is supported by Father's knowledge of, and failure to act upon, Mother's drug use during the course of her pregnancy. Generally, a parent's knowledge of the other parent's drug use during pregnancy and corresponding failure to protect the unborn child from the effects of that drug use can support an endangerment finding. *In re J.W.*, 645 S.W.3d at 749. As the supreme court explained in *J.W.*, a contrary rule "would effectively endorse a parent's willful ignorance of the significant risk that a pregnant mother's drug use poses." *Id.* at 750. Here, however, Father testified that he called the Department to report Mother's drug use when he first discovered it "about halfway through the pregnancy." The Department asserts that "father recanted his claim of reporting Mother during his psychological exam." We disagree with the Department's characterization of the evidence. Lara Hastings, the clinical psychologist who conducted Father's psychological examination, testified that Father "claimed that he first did report [Mother's drug use during the pregnancy], and then he later did not report it because he did not want to stress the mother out." The Department apparently interprets this statement to mean that Father initially claimed to have reported Mother's drug use, but later admitted he did not. That is a misinterpretation; Dr. Hastings testified that Father told her that he initially reported

–10–

Mother to the Department, but did not make a *second* report due to his concern over Mother's stress. Additionally, Dr. Hastings's report states that Father claimed to have confronted Mother about her drug use during the pregnancy: "[Father] indicated that when he suspected [Mother] was using drugs, he told her that he thought she was using drugs and she was defensive." Father's testimony was therefore consistent with his statements to Dr. Hastings that reported Mother's drug use to the Department at least once. On this record, we cannot conclude that a factfinder could form a firm belief or conviction that Father did nothing to curb Mother's drug use.

That is not the end of the inquiry, however. As the factfinder and sole judge of credibility, the trial court was free to disbelieve Father's claim. We also cannot reject as unreasonable the Department's observations and factual evidence that Father engaged in conduct during Mother's pregnancy, including Father's own habitual drug use, which may have affected D.C.'s well-being. Further, even if the trial court had credited Father's testimony that he reported Mother's drug use to the Department, the trial court could have reasonably concluded that one phone call to DPS was not enough to protect D.C.'s well-being. Given the appropriate deference to the trial court's resolution of conflicts in the evidence and viewing the evidence in the light most favorable to the trial court's finding, we conclude the evidence was legally sufficient to support the trial court's endangerment finding. However, because the record is undeveloped regarding the parties' relationship prior to

removal and specifically during the gestation period, we conclude the evidence is factually insufficient to support the trial court's finding that Father engaged in conduct that endangered D.C.'s physical or emotional well-being.

"Appellate courts have broad discretion to remand a case for a new trial in the interest of justice." *In re H.H.*, No. 05-15-01322-CV, 2016 WL 556131, at *3 (Tex. App.—Dallas Feb. 12, 2016, no pet.) (mem. op.) (citing TEX. R. APP. P. 43.3(b)). "Remand is appropriate when, for any reason, a case has not been fully developed below." *Id.* We conclude a remand of the case is appropriate to further develop the record and is in the interest of justice. *See id.* We overrule Father's first issue, sustain his second issue, and remand this case for a new trial.

## B. Family Code § 161.001(b)(1)(O)

In his third and fourth issues, Father asserts that the evidence was factually and legally insufficient to support a finding under § 161.001(b)(1)(O) of the Family Code. Subsection (O) authorizes termination upon clear and convincing evidence that the parent

> failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months *as a result of the child's removal from the parent* under Chapter 262 for the abuse or neglect of the child.

TEX. FAM. CODE ANN. § 161(b)(1)(O) (emphasis added). The Texas Supreme Court has held that subsection (O) requires the Department to prove that the child was removed from her parent because of abuse or neglect. *In re E.C.R.*, 402 S.W.3d 239,

–12–

246 (Tex. 2013); *See also In re A.T.*, No. 05-19-00346-CV, 2019 WL 4126603, at *8 (Tex. App.—Dallas Aug. 30, 2019, no pet.) (mem. op.). The evidence at trial showed that D.C. was removed as a result of Mother's drug abuse during pregnancy. D.C. was in the NICU from the time of her birth until her discharge, whereupon she was placed in foster care. She was never in Father's care or custody. "Given that the evidence undermines application of subsection (O), we conclude evidence that Father failed to follow the service plan cannot, of its own weight, serve as clear and convincing evidence of [D.C.]'s best interest." *Id.*

We sustain Father's third issue as it pertains to subsection (O). Because of our disposition of Father's first, second, and third issues, we need not address his fourth issue challenging factual sufficiency under subsection (O) or his fifth and sixth issues challenging the legal and factual sufficiency of the best interest findings. TEX. R. APP. P. 47.1.

## C. Conservatorship

We review the trial court's conservatorship order for abuse of discretion. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). The issue of sole managing conservatorship was part of a larger proceeding that resulted in termination of the parents' parental rights. We have concluded that the trial court's termination of Father's parental rights was not supported by the evidence in the record before us and therefore his pre-termination status should be reinstated. Mother's parental termination is not challenged. In the absence of termination of both of D.C.'s

parents' rights, appointing the Department as sole permanent managing conservator was an abuse of discretion. *Id*. Therefore, the Department's pre-termination status as temporary managing conservator of D.C. should be reinstated. *In re M.K.*, No. 05-18-01297-CV, 2019 WL 2283886, at *6 (Tex. App.—Dallas May 29, 2019, no pet.) (mem. op.). We sustain Father's seventh issue and remand the conservatorship issue for a new trial. *See In re F.E.N.*, 579 S.W.3d 74, 75 (Tex. 2019) (affirming court of appeals decision to remand issue of conservatorship for a new trial after reversing trial court's termination of Father's parental rights).

## CONCLUSION

We conclude that the evidence was factually insufficient to support termination under Family Code § 161.001(b)(1)(E) and legally insufficient under § 161.001(b)(1)(O). We further conclude the trial court abused its discretion in appointing the Department the sole permanent managing conservator of D.C.

We reverse the Final Order of the trial court naming the Department the sole permanent managing conservator of D.C., render judgment reinstating the Department as the temporary managing conservator of D.C., render judgment reinstating Father to his pre-termination status, and remand the issues of termination and conservatorship to the trial court for further proceedings consistent with this opinion.

In all other respects, we affirm the trial court's judgment.


                 /Bonnie Lee Goldstein/
                 BONNIE LEE GOLDSTEIN
                 JUSTICE

221223F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

IN THE INTEREST OF D.C., A CHILD

No. 05-22-01223-CV

On Appeal from the 304th Judicial District Court, Dallas County, Texas
Trial Court Cause No. JC-20-00985-W.
Opinion delivered by Justice Goldstein. Justices Pedersen, III and Smith participating.

In accordance with this Court's opinion of this date, the final order of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's judgment terminating Father's parental rights to D.C. and the portion of the final order appointing the Texas Department of Family and Protective Services (Department) as permanent managing conservator of the child. We **RENDER** judgment reinstating the Department as temporary managing conservator of D.C. and reinstating Father to his pre-termination status. In all other respects, the trial court's final order is **AFFIRMED**. We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

Judgment entered this 4th day of May 2023.